Maurice SIGLER, Appellant,

v.

Vincent R. LOWRIE, Appellee.

No. 19212.

United States Court of Appeals
Eighth Circuit.

Dec. 4, 1968.

Rehearing Denied Jan. 8, 1969.

Melvin Kent Kammerlohr, Asst. Atty. Gen. of Nebraska, Lincoln, Neb., for appellant, Clarence A. H. Meyer, Atty. Gen. of Nebraska, Lincoln, Neb., on the brief.

Fredric H. Kauffman, Lincoln, Neb., for appellee.

Before VOGEL, LAY and BRIGHT, Circuit Judges.

LAY, Circuit Judge.

The warden of the Nebraska State Penitentiary appeals from an order enjoining him from taking a prisoner's "pay" to reimburse the state for certain expenses. These costs were incurred when the state chartered a plane to return the prisoner from California to Nebraska after the latter had escaped from prison in 1963. The expenses amounted to $464.50. Upon return to Nebraska the prisoner pled guilty to an escape charge in Lancaster County District Court and was taxed $44.40 in court costs. In this action the federal district court treated the prisoner's motion as one filed under the Civil Rights Act. After an evidentiary hearing, the trial court allowed the warden to pay the court costs to the county and to cancel any credits which might have accrued in the prisoner's "spending account" prior to his escape. However, the warden was enjoined in taking from the prisoner's account any future earnings to reimburse the state for the plane expense because this would deprive the prisoner of property without due process of law. The court further ordered the warden to lift any restrictions placed upon petitioner's "spending account." The warden defends his action as a "disciplinary" measure allowed under the Nebraska statutes.

Upon review, we find the prisoner has failed to show proper grounds for relief in the federal courts. We reverse.

The applicable Nebraska statutes provide:

"An account shall be kept by the chief officer of the Nebraska Penal and Correctional Complex of the labor performed by any convict or person under sentence in such institution. In such account the convict shall be credited with wages for the time he is engaged in work. The rate of such wage and the amount credited to each convict shall be regulated by the Director of Public Institutions or under his direction." Section 83–436, Neb.Rev. Stat.1943 (Reissue 1966).

"The warden shall credit each prisoner with not to exceed one-third of the amount of his earnings. The credit shall be an amount that the warden shall deem just and equitable, taking into account the character of the prisoner, the nature of the crime for which he is imprisoned and his general deportment. Funds thus accruing shall be credited to the prisoner in the prisoners' fund and paid out on his order, or paid to the wife and family of the prisoner on the order of the warden, or paid to him only on his discharge, as the warden may deem best. The warden, with the approval of the Director of Public Institutions, for the violation of a rule, want of propriety or other misconduct, as a matter of discipline, may cancel a portion of a prisoner's credit." Section 83–439, Neb.Rev.Stat.1943 (Reissue 1966).

The testimony shows that a prisoner may earn up to $15.00 a month for his labor under the statute. The evidence reflects that an amount *up to* one-third of his total prison earnings may be placed in his "spending account," while the balance of his earnings goes to his "wage saving account." Within the latter account are also any monies which the prisoner brings into prison with him or which might be sent to him during his confinement. This account is turned over to the prisoner only when he is released. The "spending account," on the other hand, is used by the prisoner for miscellaneous purchases while in prison.

The testimony reflects that the prisoner's "spending account" has been "frozen" until such time that the expenses for the plane and court costs relating to the escape are paid. The deputy warden testified that no monies the prisoner possesses or receives from outside sources have or will be taken. We also construe his testimony to mean that only prison earnings credited to his "spending account" have been cancelled.

We agree with the learned trial judge that to "fine" the prisoner as a penalty for escape and thereby summarily take from him *vested* monies in order to pay the "fine" would be to deprive him of property without due process of law. Cf. Strong v. State ex rel. Barrett, 129 Tenn. 472, 166 S.W. 967 (1914). However, we find that neither the state statutes nor the warden's interpretative application of them deprives the prisoner of any such constitutional right.

■ The Nebraska Legislature has provided in § 83–436 that a prisoner will be paid for labor at a rate to be regulated by the director of prisons. There exists no constitutional right for such payment and it is readily apparent that such compensation is by grace of the state. Cf. Draper v. Rhay, 315 F.2d 193 (9 Cir. 1963). And, it is equally clear at least up to one-third of such compensation is a matter of conditional grace subject to the warden's administrative discretion. A state legislature may grant a favor to a convicted criminal, but it also may attach such conditions to the granting of the favor as it deems proper. See Ughbanks v. Armstrong, 208 U.S. 481, 488, 28 S.Ct. 372, 52 L.Ed. 582 (1908).

Under § 83–439 it is provided that up to one-third of the monies earned may be provided for the prisoner's use. The precise amount is placed within the warden's discretion as to what is "just and equitable" and may depend upon the prisoner's "character," his "crime" and "deportment."

■ The statute also provides that this fund may be paid out to the prison-

er, his wife or family, or held for the prisoner's discharge "as the warden may deem best." The warden's discretion is thus limited in how this fund may be used. *The statute does not provide for the warden to make payment of monies to third parties for the debts of the prisoner.*[1] However, it is within the warden's discretion to withhold all or any portion of these earnings until the prisoner's discharge. There is no federal right deprived or constitutional abuse in his doing so and the trial court was in error in ordering the warden to remove his restrictions on the account.

■ Finally, under § 83–439 the warden may "cancel" a portion of the prisoner's credit as a disciplinary measure. This provision makes clear that a portion of the spending credit which has accrued for "just and equitable" reasons may be cancelled. The prisoner argues that any cancelled credit is to be withheld until his discharge. If this were true, provision for cancellation would not be necessary since the warden has already been given the statutory discretion to withhold this credit until discharge. Thus, we view the "spending account" as a conditional credit of accessible funds which may be increased upon good behavior and cancelled upon bad behavior. Cf. Douglas v. Sigler, 386 F.2d 684 (8 Cir. 1967).

■ The trial court reasoned that cancellation of *future* credits amounted to a "fine" since it was prospective in nature and was not allowed by the stat-ute. However, prospective cancellation of a conditional grant, although seemingly inconsistent with the intent of the statute,[2] is nevertheless not a deprivation of a federal constitutional right. The statutory provision for cancellation makes explicit that the "spending account" never takes on *vested* characteristics. And assuming the prisoner's cancellation of a future credit is in violation of the statute, this does not properly state a claim for relief under the Civil Rights Act. Title 42 U.S.C. § 1983 is not concerned with mere violations of state law. As stated by Mr. Justice Douglas in Screws v. United States, 325 U.S. 91, 108, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945), a case construing 18 U.S.C. § 242, a civil rights statute in *pari materia:*

> "The problem is not whether state law has been violated but whether an inhabitant of a State has been deprived of a federal right by one who acts under 'color of any law.' He who acts under 'color' of law may be a federal officer or a state officer. He may act under 'color' of federal law or of state law. The statute does not come into play merely because the federal law or the state law under which the officer purports to act is violated. It is applicable when and only when someone is deprived of a federal right by that action."

See also Stiltner v. Rhay, 322 F.2d 314, 315 (9 Cir. 1963); O'Connor v. O'Connor, 315 F.2d 420, 422 (5 Cir. 1963);

---

1. It seems clear that a third party creditor of the prisoner should not summarily be paid from the fund for a debt or even be able to satisfy a judgment against the prisoner without proper legal process. Thus, as illustration, the warden's summary payment to Lancaster County of court costs, as the district court approved, would not be proper under the statute. And such payment *would be* a recognition of *vested* property interests of the prisoner and an unauthorized deprivation of monies without due process. If the judgment for costs was not ordered paid by the prisoner, whether the prisoner's funds could be legally executed upon is a problem not before us.

2. We agree with the trial court that the warden erroneously construes the statute to mean that he may cancel both accrued and future credits. We doubt if the state legislature intended such application. It would be incongruous to say that the "spending account" which may be inceased for good behavior may nevertheless be credited up to the full one-third of the prisoner's total earnings in order to punish the prisoner by then cancelling a greater portion of his earnings. The purpose of an increase of allowance in the "spending account" is obviously not to inflict future punishment.

Association for Preservation of Freedom of Choice, Inc. v. Simon, 299 F.2d 212, 214 (2 Cir. 1962). It is true that the attorney general stipulated that the warden did not "cancel" the credit but actually "fined" the prisoner. However, we feel in view of the fact that the prisoner's vested interests are not involved, the effect of the warden's action is to "fine" the prisoner by merely cancelling his conditional credit. As to the plane expense, no money exchanges hands, it is a bookkeeping credit only which is cancelled. In this instance it is not the choice of words but the measured action induced which becomes relevant. When such action fails to encroach upon federal rights an essential ingredient of our jurisdiction is missing.

Judgment reversed. Each party to pay its own costs.