Tommy J. CARTWRIGHT, James F. Murphy and Stephen A. Little, Co-Administrators of the Estate of Ira L. Lauderdale, Deceased, Appellees,

v.

ATLAS CHEMICAL INDUSTRIES, INC., a foreign corporation; American Cyanamid Company, a foreign corporation; and Deupree Distributing Co., Inc., an Oklahoma Corporation, Appellants.

No. 54023.

Supreme Court of Oklahoma.

Jan. 20, 1981.

Rhodes, Hieronymus, Holloway & Wilson by Russell B. Holloway and A. Scott Johnson, Oklahoma City, for appellants.

Jack B. Sellers, Law Assoc. Inc. by Jack B. Sellers, Sapulpa, for appellees.

OPALA, Justice:

The *single* issue raised by this appeal is whether the body of a petition may be amended in the trial court—after issuance of appellate mandate affirming the judgment—to substitute for the name of a misdescribed party-defendant the correct corporate designation of the intended but misidentified adversary. We hold that in the rather unusual posture narrowly delimited by the facts of this case the substitution effected by the trial court is tainted with neither procedural nor constitutional infirmity.

This wrongful death action was occasioned by a premature explosion of dynamite fuse caps.[1] The intended corporate defendant was the manufacturer of the caps. Because of a confusing state of corporate records on file with the Secretary of State at the time the action came to be brought, plaintiffs' counsel assumed that the target of the suit was Atlas Chemical Industries, Inc., a Rhode Island corporation [Atlas-RI]. In the body of the petition Atlas-RI was described as the manufacturing entity who was the defendant in the case. Not until the trial did it develop that the manufacturer intended to be sued was misidentified. Its correct name was Atlas Chemical Industries, Inc., a Delaware corporation [Atlas], rather than Atlas Chemical Industries, Inc., a Rhode Island corporation. Both of these entities maintained the very

1. The jury verdict for the plaintiffs was affirmed on appeal. See *Cartwright v. Atlas Chemical Industries, Inc.*, Okl.App., 593 P.2d 104 [1979].

same corporate service agent for the Oklahoma process served in the action.

The misdescription sought to be corrected admittedly results not from a party's misnomer either in the caption of the petition or in the process issued. In neither of these instruments *does the caption* explicitly or implicitly misidentify the manufacturer. This is so because it designates that entity as "Atlas Chemical Industries, Inc., a foreign corporation." The misidentification, which was the subject of the post-judgment controversy now before us, results clearly from *a single reference in the body of the petition in which the not-incorrectly-captioned manufacturer* is misdesignated as a Rhode Island rather than a Delaware corporation.

The post-judgment dispute here under review was set in motion by the plaintiffs' quest to correct, after mandate and affirmance, the misdescription in the body of the petition—called by them "a party's misnomer"—which misdesignates the manufacturing entity as a Rhode Island corporation. From an order which substituted Atlas for the misidentified corporate entity named in the petition, Atlas[2] brings this appeal.

## I.

### AMENDMENT OF JUDGMENT ROLL BY SUBSTITUTION OF PARTIES DISTINGUISHED FROM MODIFICATION OF JUDGMENT

Atlas seeks reversal contending, inter alia, the trial court is "without jurisdiction" to effect an alteration of the record proper in a suit once mandate has been issued. Any attempted change at that stage, we are told, would be tantamount to tampering with the "law of the case". After mandate, we are urged, the trial court's authority extends no further than to purely ministerial functions. At that point in litigation, Atlas urges, the trial court may only correct the judgment by a *nunc pro tunc* revision to make its record "speak the truth" and cause it to reflect what was actually adjudged but was incorrectly recorded. Atlas claims that in this case the trial court undertook, by means of a *nunc pro tunc* amendment, both to change substantially the legal position of a party-defendant that was not before it and to adjudicate impermissibly that absent party's property rights. Moreover, Atlas asserts that the proper procedure for a post-judgment correction is not 12 O.S.1971 § 317[3]—the statute invoked by plaintiffs—but rather that prescribed by 12 O.S.1971 § 1031.[4] The latter procedure, we are told, was not available to the plaintiffs because it had not been timely invoked.

Plaintiffs counter that they sought only the correction of a misnomer—not the modification of a judgment under § 1031. They assert that Atlas (Del.)—the correct entity—had received timely notice of the suit, actually appeared in the case and availed itself of unimpeded opportunity to present its defense during every stage of the litigation process.

We agree that the order allowing the corporate designation of the defendant to be changed did not constitute here a "modification" of the judgment in the § 1031 sense of the term. The plaintiffs were seeking *not* to alter or change the *judgment* itself but rather to amend the petition by substituting for the misdesignated and misidentified defendant the correct corporate entity of the manufacturer who was admit-

2. The successor to Atlas (Del.) is ICI Americas, Inc., which entity entered an appearance in this post-judgment proceeding and is the appellant herein.

3. The terms of 12 O.S.1971 § 317 provide in pertinent part: "The court, may, *before or after judgment*, in furtherance of justice, and on such terms as may be proper, *amend* any pleading, process or proceeding by adding or striking out the name of any party, or correcting a mistake in the name of a party, or a mistake in any other respect, ... when such

amendment does not change the nature of the transaction or occurrence that is the subject of the claim or defense..." [Emphasis added]. All section numbers to which reference is made in the text are in Title 12.

4. The terms of 12 O.S.1971 § 1031 provide in pertinent part: "The District Court shall have power to vacate or *modify* its own judgments or orders within the times prescribed hereafter: * * *". [Emphasis added].

tedly the intended party-defendant with notice of suit and full opportunity to defend.

■ The word "modification", as used in § 1031, refers to a process by which new terms are sought to be added to a judgment or the old ones changed, even though the general purpose and legal effect of the decision may remain intact.[5] The word "modify" means *to alter or change in incidental or subordinate features,* or enlarge, extend, limit or reduce.[6] In short, a § 1031 "modification" is an alteration *in the terms of the adjudicated obligation.*

■ In contrast to a § 1031 modification, an amendment under § 317 contemplates but a change in the court record that would make it either speak the truth or reflect the position that actually unfolded itself during the litigation process. The outer limit of § 317 proceeding is that the contemplated amendment may not change a claim or defense.[7] The power to make a post-judgment amendment is not *ipso facto* abridged by an intervention of mandate where the judgment stands affirmed. The purpose served by appellate mandate is to communicate and signify the finality of a higher court's disposition of appeal rather than to *per se* block all subsequent proceedings pertaining to the affirmed judgment.[8]

■ As we analyze the posture of this case, the object of the proceeding here was not to *affect* (modify) the decision rendered but rather to *make its record conform* to the proof establishing who was the *intended* and *actual* adversary in the forensic combat from which the judgment resulted. The relief sought was hence one clearly within § 317.

## II.

### EFFECT OF A § 317 SUBSTITUTION OF PARTIES AFTER THE LIMITATION PERIOD

■ The plaintiffs have mischaracterized this proceeding as a § 317 amendment to correct a misnomer. The typical "misnomer" problem commonly concerns itself with a wrong middle initial or some other omitted or misstated word in the designation or appellation of a party.[9] The discrepancy is usually of a minor nature. Corrections of misnomers are commonly allowed

---

**5.** Black's Law Dictionary, 4th Ed. at 1155 [1951]. There it is further stated that "modification" is not exactly synonymous with "amendment", for the former term denotes some minor change in the substance of the thing, without reference to its improvement or deterioration thereby, while the latter word imports an amelioration of the thing—as by changing the phraseology of an instrument, so as to make it more distinct or specific—without involving the idea of any change in substance or essence.

**6.** Black's Law Dictionary, 4th Ed. at 1155 [1951].

**7.** Permissible amendments under § 317 after the limitation period are those which (a) merely amplify allegations stated in the original petition, *Dewailly v. First National Bank of Coffeyville,* Okl., 338 P.2d 1110 [1959]; (b) do not vary the substance of the wrong charged against the defendant nor enlarge the duty or liability which devolved upon the defendants and which go only to form and not to substance of the plaintiff's cause of action, *Doyle v. Oklahoma Press Pub. Co.,* 206 Okl. 254, 242 P.2d 155 [1952]; (c) add essential allegations originally omitted without substantially changing the cause of action, *Harmon v. Hines,* 160 Okl. 120, 16 P.2d 94, 96 [1932]; and (d) make per-

fect what was imperfectly stated and does not state a new or different claim, *Amis v. Maney,* 153 Okl. 193, 4 P.2d 1048 [1931].

In Black's Law Dictionary, 4th Ed. at 106, the phrase "amendment to a pleading" (as distinguished from a supplemental pleading) refers to facts existing at the time of the commencement of an action.

**8.** Although the trial court, after mandate has been issued, has no jurisdiction to amend the judgment appealed from except in conformity with the order or mandate (*M. E. Trapp Associated v. Tankersley,* 206 Okl. 118, 240 P.2d 1091 [1952]), it may render a *nunc pro tunc* correction which merely corrects the record so as to make it conform to the truth. The power of the trial court to make a *nunc pro tunc* correction exists independent of its authority to modify or vacate judgments under 12 O.S.1971 § 1031. *Hawks v. McCormack,* 180 Okl. 569, 71 P.2d 724 [1937].

**9.** *O. K. Butler Const. Co. v. Bentley,* 205 Okl. 225, 237 P.2d 886, 889 [1951]; *Chaney v. National Bank of Commerce of Tulsa,* 179 Okl. 469, 66 P.2d 917 [1937]; Anno. 8 A.L.R.2d 6, 16.

where *no* confusion can exist as to the identity of the party-litigant intended to be sued and the correct entity did, in fact, receive notice of suit.

The rule applied to curing a defendant's misnomer does not extend to situations where, as here, the misdesignation results in the naming, as a party-litigant, an entity distinct from that which was the intended defendant in the suit. By misdescribing in the petition's body the not-incorrectly-captioned defendant, plaintiffs brought into their case a totally different entity. In this post-judgment and post-mandate proceeding they now seek to correct the misdesignation by *substituting* their intended target for the one that was misdescribed.

As a general rule, when an amendment by which a new defendant is substituted for the original one is made after the limitation had run, the new defendant may plead the bar of the statute.[10] Although we stand committed to this rule and reaffirm it here, it cannot avail to Atlas for the reasons to be stated in the next paragraph of this opinion.

## III.

## EXCEPTION TO RULE AGAINST SUBSTITUTION OF PARTIES AFTER LIMITATION PERIOD

Judgments bind only parties and privies—not strangers or persons not parties to the action.[11] Included under the rubric of "parties" are also persons who, though not nominal parties to the action, have control of the prosecution or defense in furtherance of their own interest and who enjoy, because of factual circumstances, all the rights of an actual party.[12] A person falling in this category does become a privy in interest and is as completely bound by the judgment as if he had actually been named in the litigation.[13] Want of service of process on a party under these circumstances is not prejudicial nor does it raise due process implications. The timely commencement of an action by the plaintiff effectively interrupts the running of the statute of limitations both as to the named parties and as to those who, through their participation and control in the litigation

10. *Harting v. Benham Engineering Company*, Okl.App., 490 P.2d 1100, 1103 [1971]; Anno. 8 A.L.R.2d 6, 157.

11. *Cressler v. Brown*, 79 Okl. 170, 192 P. 417, 422 [1920]; *Morrissey v. Shriver*, 88 Okl. 269, 214 P. 702, 703 [1923]. The doctrine of res judicata and the correlated doctrine of estoppel by judgment are, strictly speaking, operative only as between persons who were parties or privies to the action in which the judgment was rendered. The broad policy behind those doctrines that there should be an end to litigation and that a matter once adjudicated should not be called again for readjudication has frequently caused the courts to give the term "parties" as used in this connection a broader coverage than merely embracing parties to the record of an action. This is so whenever that interpretation would not come in conflict with the equally fundamental policy of the law that a person must have had his day in court before he can be bound by the judgment of a court. Anno. 139 ALR 9, 12.

12. Control of the prosecution or defenses indicated by, *inter alia*, the right to introduce evidence, examine and cross-examine witnesses and to prosecute an appeal from the decision of the trial court.

This view is expressed in Restatement of Judgments 2d, Ten.Draft No. 2 § 83. That statement provides: "A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party."

13. *Reinhart & Donovan Co. v. Guaranty Abstract Co.*, 201 Okl. 334, 205 P.2d 881, 886 [1949]. In *Reinhart*, a party-plaintiff, not appearing of record, supervised and controlled the case through its lawyers. This plaintiff was bound by the judgment and estopped from relitigating the same issues with the defendant. *Sparks v. Gallagher*, 114 Okl. 103, 243 P. 228, 229 [1926].

In *Rivers v. School Dist. No. 51 of Noble County*, 156 P. 236, 238 [Okl.1916] (aff. 68 Okl. 141, 172 P. 778 [1918], quoting from cases in other jurisdictions, we said: "Attorneys of the nominal defendant in a suit, who were in fact the real parties in interest and conducted and controlled the defense, will be bound by the judgment as though they were formal parties to the action. * * * One who, though not a party, defends or prosecutes an action by employing counsel, paying costs, and by doing those things which are usually done by a party, is bound by the judgment rendered therein."

process, are legally deemed bound by the judgment. The post-judgment substitution for the named party-defendant of one who, though undisclosed by the judgment roll, was a notified and participating combatant in the litigation process cannot be deemed the institution of a new suit.

■ Atlas, although misdesignated in the body of the petition, was in fact and in law the actual combatant in its role as the manufacturer. The trial court's findings—made at the conclusion of the ancillary post-judgment contest here under review—amply sustain this conclusion and stand largely unchallenged. These findings are: (a) both corporate entities [Atlas-RI and Atlas (Del.)] are interlocking and have the same officers, directors and service agent; (b) the correct entity did receive actual notice of the occurrence of the accident and pendency of the suit; (c) the correct entity was present at the trial by its house counsel; (d) the correct entity had full and complete opportunity to defend and did so and (e) the misdesignated entity cannot be deemed prejudiced by the plaintiffs' invocation of § 317 proceedings for its substitution as party-defendant on the face of the judgment roll.

Not until the case was well into the trial stage did the plaintiffs become aware of their misidentification of Atlas. When the action was first called for trial, the named defendant stipulated that it was the manufacturer of the dynamite caps. In his opening statement, counsel for the defendant again made the same admission. It was after the trial's commencement that counsel first sought, unsuccessfully, to withdraw the stipulation. Later, counsel also failed in his efforts to have the case removed to a federal court on the basis of diversity of citizenship. He asserted in the removal proceeding that the defendant-manufacturer was a Delaware corporation. Thus, for all practical purposes, counsel stood as a representative of Atlas (Del.), at least from the moment the misdesignation came to be revealed.

Lastly, Atlas contends that the plaintiffs were guilty of laches in not seeking earlier substitution. It asserts that when the plaintiffs first learned the manufacturer was a different entity, they should have immediately sought the substitution of Atlas (Del.). Since this was not done, Atlas (Del.) contends, the plaintiffs are now estopped from securing the benefit of the post-judgment substitution they seek.

■ We are not in accord with this view. The named defendant never revealed by any pleading on file that it was the wrong defendant entity. There was hence no indication on the face of the record that the wrong manufacturer had been sued. Since Atlas (Del.) revealed itself by the transcript to have been a combatant during the trial of the case, there was *no manifest necessity* for the plaintiffs to seek a substitution of defendants before judgment. Such a mid-trial substitution would have needlessly delayed the trial proceedings. The proper parties were, for all purposes, present and prepared to meet the issues.

Under the circumstances narrowly delimited by the procedural posture of this case, the substitution of Atlas (Del.) for the nominal defendant is not contrary to due process nor violative of § 317.[14]

Affirmed.

All Justices concur.

■

14. Whether by this correction the court did absolve the Rhode Island corporation of all liability for payment of the judgment facially against it is not before us and we are not called upon to decide whether, because of a belated objection to its inclusion as a party-defendant below, Atlas-RI may now be deemed estopped from denying its liability on the judgment.