**Floyd E. CUMBEY, Lawrence Breedlove, and Robert Earl Jackson, Appellants,**

v.

**The STATE of Oklahoma, et al., Appellees.**

No. 59795.

Supreme Court of Oklahoma.

May 7, 1985.

Floyd E. Cumbey, Lawrence Breedlove, and Robert Earl Jackson, pro se.

Michael C. Turpen, Atty. Gen. by David W. Lee, Asst. Atty. Gen., Oklahoma City, for appellees.

ALMA WILSON, Justice.

Appellants, inmates of the Joseph Harp State Correctional Center, filed the instant civil rights action pro se challenging the administration of inmate trust savings accounts. Appellants complain that they are being unjustly denied immediate access to monetary employment credits accruing to these accounts during confinement. Principally, Appellants attack the constitutionality of 57 O.S.1981 § 549.5, which prescribes certain duties of the State Board of Corrections with respect to prison employment industries, namely:

> "The duty to establish the percentages of such wages which shall be available for his [the inmates] personal use; to the lawful dependents of the inmate, if any; to the victim of the inmate's crime; for payment of creditors; and to the Department for costs of incarceration. *Provided, that not less than twenty percent (20%) of such wages shall be placed in an account payable to the prisoner upon his discharge.* The term "prisoner's wages", as used herein, refers only to that portion of the prisoner's wages earned in the course of his employment with a prison industry and after deduction for all state and federal taxes;" [Emphasis added.]

In conjunction with the above quoted proviso, Appellants also challenge the following

emphasized portions of 57 O.S.Supp.1984 § 542, which provide:

> *"The State Board of Corrections shall cause to be placed in an account, payable to the inmate upon his discharge, income from the inmate's employment* and any other income or benefits accruing to or payable to and for the benefit of said inmate, including any workers' compensation and Social Security benefits. *From this account the State Board of Corrections shall charge any inmate, except for those inmates employed in state prison industries, for costs of incarceration not to exceed fifty percent (50%) of any deposits made to said account.* Withdrawals and deposits shall be made according to the rules ·and regulations established by the Board of Correction." [Emphasis added.]

On August 31, 1982, Appellants filed an *in forma pauperis* petition in the District Court of Cleveland County. The petition alleged that the three appellants have tried unsuccessfully to withdraw monies from their 20% inmate trust savings accounts for personal and family purposes and to pay court costs and filing fees. On the basis of the Oklahoma Constitution, Article II, §§ 7, 9, 20, 21 and 30; and, the United States Constitution, Amendments 1, 4, 5, 8, 9 and 14, Appellants assailed the constitutionality of 57 O.S.1981 § 549.5 and 57 O.S.Supp. 1984 § 542 as (1) depriving prison inmates of monies earned in prison without due process of law; (2) a gross search and seizure; (3) cruel and unusual enhancement of punishment; (4) involuntary servitude; (5) depriving inmates of access to the courts; and (6) a violation of the property rights of prisoners to receive interest upon the money held in inmate trust fund accounts.

The Appellee, State of Oklahoma, demurred to the petition on the ground that the petition failed to set forth facts sufficient to constitute a cause of action. On February 18, 1983, the trial court sustained the demurrer as follows:

> "Court finds that 57 O.S. §§ 549.5 and 542 are constitutional, that plaintiffs are not entitled to an immediate accounting, and that claims for damage lack merit. Demurrer sustained, exception allowed."
>
> /s/

The trial court's final ruling, *above*, sufficiently manifests judicial intention to thereby enter complete judgment in the matter below from which an appeal may be perfected. This is no less true, though the trial court did not formally dismiss.

**I**

On appeal Appellants made application to proceed *in forma pauperis*. We denied the request, but directed the Department of Corrections to release the sum of fifty ($50) dollars for the costs of filing this appeal; and the sum of thirty ($30) dollars for payment to the Clerk of the District Court of Cleveland County for costs of assembling the record on appeal. The record showed the three appellants' inmate trust account balances ranged from $118.09 to $1,644.41. Access to the courts, even for those currently incarcerated, may not be abridged. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). However, by virtue of the inmate trust fund accounts, the appellant-inmates herein are not eligible to proceed *in forma pauperis* as indigents. Although trust account funds do not become *payable to the prisoner* until discharge, they may be released to this Court and to the district courts for payment of filing fees and court costs upon proper application and court order. Determination of permission to proceed *in forma pauperis* should take place on a step-by-step basis as costs are incurred. The purpose of the requirement is to curb the indiscriminate filing of prisoner civil rights actions, by prompting inmates to confront the initial dilemma which faces most other potential civil litigants: is the merit of the claim worth the cost of pursuing it? *See, Carroll v. United States,* 320 F.Supp. 581 (S.D.Tex.1970). A prisoner proceding *in forma pauperis* does not confront this dilemma. Moreover, the public at large ulti-

mately bears the expense of a proceeding *in forma pauperis.*

## II

■ The thrust of Appellants' substantive arguments with respect to 57 O.S.1981 § 549.5, concerns the question of whether inmates are unlawfully deprived of the immediate personal use of funds or interest thereon in violation of state and federal constitutional standards. It is the holding of this Court that Appellants' allegations fail to demonstrate the existence of any legal right to personal use of, or interest on, the statutory 20% compulsory savings from the inmate trust account credits. We find no deprivation of constitutional rights.

■ Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison, *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); but lawful incarceration brings about the necessary withdrawal of many privileges and rights, a retraction justified by the considerations underlying our penal system. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). *Also see, Prock v. District Court of Pittsburg County,* 630 P.2d 772 (Okl.1981).

■ It is well established that a state may legitimately restrict an inmate's privilege to earn a wage while incarcerated. The benefits of employment during incarceration are granted by the state as a privilege and not as a right. In an early case, *Rice v. State,* 108 Okl. 4, 232 P. 807 (1925), this Court held, "The state is entitled to the labor and services of its convicts while confined in its prisons, and has the authority to produce by such labor things of commercial value." This early principle—that the labor of prison inmates belongs to the state—has since been repeated by many courts. *See, e.g., Sigler v. Lowrie,* 404 F.2d 659 (8th Cir.1968) *cert. denied* 395 U.S. 940, 89 S.Ct. 2010, 23 L.Ed.2d 456 (1969); *Sims v. Parke Davis & Co.,* 334 F.Supp. 774 (E.D.Mich.1971); *Preston v. Ford,* 378 F.Supp. 729 (E.D.Ken.1974). Thus, we are of the view that whatever right Appellants have to compensation is solely by the grace of the state and governed by rules and regulations promulgated by legislative direction. The administration of our penal system involves complex problems and prison officials must be accorded latitude in the administration of prison affairs. Prisoners necessarily are subject to appropriate rules and regulations. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Penal policies are evaluated in the context of the central objectives of prison administration and constitutional protections become involved only where fundamental, humane and necessary rights are breached. Here, the alleged unconstitutional manner in which inmate accounts are established and managed within Oklahoma's penal system did not deprive Appellants of any property to which they were legally *entitled.*

■ In a realistic economic sense, we find that the monetary credits awarded to Appellants' prison accounts are not "wages" as defined in an employer-employee relationship. Inmates employed by prison industries are not state employees. 57 O.S.Supp.1984 § 545(B). The state prison industries is not a proprietary corporation, but is rather concerned with providing for the proper government, discipline, treatment, care, rehabilitation, and reformation of state inmates. In furtherance of these objectives, the state legislature may grant a favor to convicted criminals, but it may also attach such conditions to the granting of the favor as it deems proper. *Sigler, supra,* at 661. Accordingly, the Oklahoma State Legislature has granted the gratuitous payment of monetary credits to inmates' accounts in the best interests of penology and societal concerns. The inmate has no inherent legal right to the payment of this gratuity, nor to determine its form or amount. We therefore view the inmates' 20% prison accounts as conditional credits of potentially accessible funds, rather than *vested* property interests. The State Board of Corrections has been given full power and authority by the legislature, in the area of prison management, to en-

gage healthy and capable inmates in productive occupations within the prison, and to potentially provide compensation in its best judgment. We find no constitutional abuse in withholding the statutory 20% of allotted credits in an account payable to the prisoner upon the event of his release. Prison officials may legitimately wish to prevent the free flow of currency within the prison system, and provide an inmate with sufficient funds upon his release to assist him in readjustment to society at large without further aid from the state treasury.

Two of the Appellants point out that they are currently serving life sentences. They contend they will never receive the benefit of their 20% trust savings accounts. We find this contention presently incapable of determination. The statute is silent regarding the disposition of credits allocated to an inmate who subsequently dies in prison. However, inasmuch as the credits are conditional and not vested property interests, present enjoyment is not constitutionally mandated. Considering the facts of this case, judicial determination of future disposition is not warranted. It is for the legislature to determine whether such potentially accessible funds will inure to the benefit of the inmates' estates, or remain in the state treasury.

■■■ Next, Appellants strenuously object that they are not accorded interest on compensation credits resulting from various prison industry sponsored labors. We find no authority which establishes a constitutional entitlement on the part of prison inmates to draw interest on compensation granted by the grace of, and administered by, the state. We are therefore reluctant to intervene in the administrative functions of the Oklahoma correctional system. Further, considering that a state may constitutionally restrict the privilege to receive any compensation, *supra;* and considering that there could be no legal expectation of interest from the state, *Cf., Mills v. Benton,* 568 P.2d 276, 277 (Okl.1977), we find no constitutional infirmity. *Also cf., Sims v.*

*Parke Davis, supra,* at 774 and *X.V. Brierly,* 457 F.Supp. 350 (E.D.Pa.1978).

### III

Finally, Appellants challenge that portion of 57 O.S.Supp.1984 § 542, *supra,* which provides for the payment by prison inmates of costs of incarceration, not to exceed 50%, from income derived from employment other than in state prison industries. The present Appellants do not allege income from such other sources as Veterans Administration benefits, Social Security benefits, Workers Compensation, royalty payments or stock dividends.

■■■ We find the challenged portion of 57 O.S.Supp.1984 § 542 constitutionally consistent with the principles previously elaborated insofar as it affects income from prison labor and inmate work release programs. The State of Oklahoma may authorize utilization of its prison inmate labor outside state prison industries. However, the receipt of compensation for such labor by the prison inmate remains a gratuity, subject to reasonable restriction by the State. A withholding of the fruits of prison labor not in excess of 50% for costs of incarceration is rationally related to the legitimate state goal of maintaining state prisons in conformity with constitutional standards.

In accordance with the dictates herein the trial court's disposition below is AFFIRMED.

DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE and SUMMERS, JJ., concur.

SIMMS, C.J., concurs specially.

OPALA and KAUGER, JJ., dissent.

OPALA, Justice, with whom KAUGER, Justice, joins, dissenting.

I recede from the court's pronouncement because this appeal is dismissible. It is sought to be prosecuted from the trial court's February 18, 1983 order that sustained the December 10, 1982 general demurrer by the Attorney General to the plaintiffs' "petition of civil rights complaint

and/or petition for declaratory judgment, injunction and quo warranto".

## I

An order sustaining a general demurrer to the petition, when not accompanied by words unequivocally terminating the action, does not constitute an appealable disposition. A plaintiff's valued, statutorily-afforded freedom either to amend or to seek leave to amend is *never* extinguished by judicial action that finds his petition vulnerable to the demurrer of his adversary.[1] While flaws or deficiencies in court records may be cured in nunc pro tunc proceedings, any changed memorial must show that it supplies an accurate entry of some past action later found to have been wrongly recorded.[2] If the trial judge did in fact desire to terminate this suit by his February 18, 1983 order, there is here *no* record trail of his pronounced or memorialized "intention". A trial court's record constitutes *the only means* for communication of its proceedings to an appellate court. Unrevealed intentions of a trial judge afford no basis for the assumption of appellate jurisdiction.[3]

Because there is *no record* in this case of a judicial disposition that terminates the plaintiffs' suit in the trial court, the action reviewed in today's opinion is not appealable and beyond the reach of our cognizance.

## II

The plaintiffs are prisoners in the state correctional system. They sought to liti-

gate below their claim against the institutional authority to certain funds believed to have been withheld from them in violation of fundamental law. Neither the Sixth-Amendment nor the Fourteenth-Amendment jurisprudence of the Federal Supreme Court makes a State responsible, under a *per se* rule, for providing counsel to indigent prisoners such as these plaintiffs, who make confinement-related complaints of the correctional authority's conduct that oversteps permissible bounds.[4] There presently appears to be no norm of state constitutional or statutory law these prisoners may invoke in support of a claim to a free lawyer. Although these plaintiffs are guaranteed unimpeded access to the courts by the Constitution of the United States[5] and by the Constitution of Oklahoma, Art. 2 § 6,[6] the right remains but an empty and idle gesture so long as they are forced to remain without the guiding hand of a skilled legal practitioner.

Whenever a confinement-related complaint is prosecuted by an indigent uncounseled prisoner, and the trial judge finds the lack of legal merit in his petition is apparent and incurable, the action should be terminated by an *explicit* ruling that should then be entered upon the court's record. This method will eliminate all uncertainty as to the reviewable character of the judge's decision and will, at once, set the prisoner free to pursue an available appellate remedy. Should the judge deem the petition's defects to be correctable, or if

1. *Merchants Delivery Service v. Joe Esco Tire Co.,* Okl., 497 P.2d 766 [1972].

2. *Cartwright v. Atlas Chemical Industries, Inc.,* Okl., 623 P.2d 606, 610 [1981] and *Stevens Expert Cleaners & Dyers v. Stevens,* Okl., 267 P.2d 998, 1001 [1954]; see also *Joyce v. M & M Gas Co.,* Okl., 672 P.2d 1172, 1174 (Opala, J., dissenting) [1983] and *Miller v. Miller,* Okl., 664 P.2d 1032, 1034 [1983].

3. *Merchants Delivery Service v. Joe Esco Tire Co., supra* note 1.

4. *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 [1974] and *Evitts v. Lucey,* — U.S. —, 105 S.Ct. 830, 83 L.Ed.2d 821 [1985].

5. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 [1977] and *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 [1974].

6. Art. 2 § 6, Okl. Const., provides:
"The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."
See *Prock v. District Court of Pittsburg County,* Okl., 630 P.2d 772 [1981].

there be *no* doubt about the merit of a petition which appears facially sufficient, counsel should be appointed to assist the complainant and the court in the presentation of the prisoner's legal claim.[7] No less is required by the Due Process Clause of the Oklahoma Constitution, Art. 2 § 7,[8] in order to safeguard the prisoner's constitutionally-protected access to a court of law. Art. 2 § 6, Okl. Const.[9]

I would hence dismiss this appeal as premature because there is here *no record* of the suit's termination. I would direct the trial judge either explicitly to terminate the action upon the record or, if he were to find the defect in the prisoners' petition to be curable, he should grant them leave to amend and appoint counsel to provide effective assistance in the preparation of further legal proceedings for the prosecution of the claim.

---

7. Lack of statutory authority for allowing compensation from state funds to counsel designated to assist a prisoner with a confinement-related claim against the correctional authority for violating a prisoner's fundamental rights does not constitute a legal impediment to a trial judge's exercise of the power to appoint counsel. When confronted with a potential breakdown in the adversary process, judges may utilize their extrastatutory power to enlist a lawyer's assistance. *Baggett v. State,* 35 Okl.Cr. 119, 248 P. 875, 876 [1926].

8. Art. 2 § 7, Okl. Const., provides:
 "No person shall be deprived of life, liberty, or property, without due process of law."

9. Art. 2 § 6, Okl. Const., *supra* note 6.
 Even under the provisions of the Federal Constitution, indigent prisoners may be entitled to assistance of counsel in certain "special circumstances". *Vitek v. Jones,* 445 U.S. 480, 497–498, 100 S.Ct. 1254, 1265–1266, 63 L.Ed.2d 552 [1980].