McLAURIN v. OKLAHOMA DEPT. OF CORRECTIONS



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:McLAURIN v. OKLAHOMA DEPT. OF CORRECTIONS

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 McLAURIN v. OKLAHOMA DEPT. OF CORRECTIONS
2020 OK CIV APP 42
Case Number: 118004
Decided: 02/21/2020
Mandate Issued: 07/29/2020
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2020 OK CIV APP 42, __ P.3d __

 

ALLAN WAYNE McLAURIN, Petitioner/Appellant,
v.
OKLAHOMA DEPARTMENT OF CORRECTIONS, Respondent/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE SUSAN STALLINGS, JUDGE

AFFIRMED

Allan Wayne McLaurin, Helena, Oklahoma, Pro Se, Appellant,

Kari Y. Hawkins, ASSISTANT ATTORNEY GENERAL, Oklahoma City, Oklahoma, for Respondent/Appellee.

Bay Mitchell, Presiding Judge:

¶1 Petitioner/Appellant, Allan Wayne McLaurin, is an inmate in custody of the Respondent/Appellee, Oklahoma Department of Corrections (ODOC). Pursuant to 57 O.S. Supp. 2014 §549(A)(5), twenty percent of McLaurin's earnings are placed in a mandatory savings account that McLaurin cannot access until his release. Under a 2014 amendment to the statute, inmates serving life sentences without the possibility of parole are exempt from this mandatory-savings provision. McLaurin argues that because he has the functional equivalent of a sentence of life without the possibility of parole, the statutory exemption should also apply to him. The trial court granted ODOC's motion to dismiss for failure to state a claim upon which relief can be granted. Having reviewed the statutory text, McLaurin's petition, and the record on appeal, we find that although McLaurin does have the functional equivalent of a sentence of life without the possibility of parole, the statutory exemption from the mandatory-savings provision applies only to inmates who have such a sentence in fact. Accordingly, we affirm.

BACKGROUND

¶2 McLaurin is currently incarcerated and serving time under thirteen separate sentences, each to be served consecutively. His total term of imprisonment is 20,750 years[1]. Although McLaurin is eligible for parole on each conviction, because he must serve at least fifteen years on each count prior to parole eligibility, he will not be eligible for release on parole until, at the earliest possible date, the year 2191. Were McLaurin to somehow survive until that year, he would be 224 years old on the date of his release.

¶3 McLaurin performs some work at the prison for which he receives wages. Pursuant to statute, ODOC has the power to establish the percentages of an inmate's wages that are used for various purposes, with the following limitation:

Provided that, not less than twenty percent (20%) of such wages shall be placed in an account, and shall be payable to the prisoner upon his or her discharge; however, inmates with a sentence of life without the possibility of parole shall be exempt from this provision. Funds from this account may be used by the inmate for fees or costs in filing a civil or criminal action as defined in Section 151 et seq. of Title 28 of the Oklahoma Statutes or for federal action as defined in Section 1911 et seq. of Title 28 of the United States Code, 28 U.S.C., Section 1911 et seq.

57 O.S. Supp. 2014 §549(A)(5) (emphasis supplied).

¶4 McLaurin sought to access funds in his mandatory-savings account to allow his fianceé to purchase clothing and religious items on his behalf. His request was first denied without explanation. After elevating his request through the appropriate administrative channels, he was told that the "mandatory savings could only be used for legal cost[s]." He pressed his request up the chain, but his claim to the funds in his mandatory-savings account was denied at each stage.

¶5 In January 2017, McLaurin filed a petition in district court seeking a writ of mandamus requiring ODOC to release the funds requested. He states in his application that he "has constitutional and statutory rights to purchase religious material as part of the Free Exercise Clause of the Oklahoma and United States Constitutions and the Religious Land Use and Institutionalized Persons Act (RLUIPA)."[2] McLaurin also makes the argument that he should be exempt from the statute because he has the functional equivalent of a life sentence without the possibility of parole.

¶6 In October 2017, ODOC moved to dismiss the action on two separate grounds. First, they noted that the 180 days permitted to serve the petition and summons had expired without service. Second, they argued that under Cumbey v. State, 1985 OK 36, 699 P.2d 1094, McLaurin has no property interest in his mandatory-savings account, and therefore his claim must be dismissed. In December 2017, without a hearing, the trial court granted ODOC's motion to dismiss. The court offered no explanation as to the reason for the dismissal, held no hearing, and did not afford McLaurin the opportunity to amend his pleadings.

¶7 McLaurin appealed (Case No. 116,863) and Division IV of this Court, reversed. The Court found that the trial court's dismissal without affording McLaurin any opportunity to amend his pleadings or assert a reason for the delinquency of service were both reversible errors. Division IV did not address McLaurin's statutory or constitutional arguments.

¶8 On remand, without any further proceedings, the trial court entered an amended order, which states:

Respondent Oklahoma Department of Corrections' Motion to Dismiss is granted in part and denied in part. Specifically, Petitioner has shown good cause for failure to timely serve the Oklahoma Department of Corrections and Respondent's Motion to Dismiss for failure to timely serve is DENIED. The Court further finds that Respondent Oklahoma Department of Corrections' Motion to Dismiss is GRANTED for the reason that Petitioner failed to state a claim upon which relief can be granted. This action is dismissed with prejudice to refiling as Petitioner's claim fails as a matter of law and cannot be cured by re-pleading.

McLaurin timely appealed and we proceed pursuant to Oklahoma Supreme Court Rule 1.36.

STANDARD OF REVIEW

¶9 Our review of an order of dismissal is de novo. Miller v. Miller, 1998 OK 24 ¶15, 956 P.2d 887. The order granting ODOC's motion to dismiss must be reversed unless it appears without doubt that McLaurin can prove no set of facts that would entitle him to relief. Niemeyer v. U.S.F.& G., 1990 OK 32, 789 P.2d 1318, 1321.

ANALYSIS

¶10 McLaurin is pro se and the contours of his legal arguments are not crystal clear. However, we read his application, and other submissions contained in the record, to make four distinct arguments that ODOC's withholding of twenty percent of his earnings for use upon release is impermissible. He first alludes to a basic statutory-interpretation argument, claiming that ODOC has simply misread §549(A)(5) in failing to include him in that group of inmates that are not exempt from the mandatory-savings provision. Second, McLaurin makes an equal-protection argument -- namely, that the legislature's inclusion of him with the class of inmates that face an actual possibility of parole during their lifetime violates his right to equal protection of the laws. Third, he alludes to an argument that his religious rights were violated because ODOC's denial was of his request to purchase religious items. Fourth, McLaurin argues that the statute in question should not apply to him because he earned the majority of his wages through Oklahoma Correctional Industries and not through ODOC directly. Each argument will be addressed in turn.

THE BASIC TEXTUAL ARGUMENT

¶11

McLaurin's most basic argument is that ODOC has simply misread the statute in question.[3] He argues that his sentence is materially indistinguishable from a sentence of life without the possibility of parole because he will, as a matter of fact, spend the rest of his life in prison with no opportunity to be released on parole. McLaurin argues, in effect, that because he could be properly described as serving a sentence of life without the possibility of parole, he is in fact serving a sentence of life without parole.

¶12 Although compelling in its simplicity, this argument cannot withstand a focused analysis. A brief perusal of Title 21 reveals that there are three basic types of non-death sentences provided for in the Oklahoma statutes. There are sentences for a term of years, life sentences with the possibility of parole, and life sentences without the possibility of parole. See, e.g., 21 O.S. Supp. 2017 §701.9(A) ("A person who is convicted of or pleads guilty or nolo contendere to murder in the first degree shall be punished by death, by imprisonment for life without parole or by imprisonment for life."). Although the effect of McLaurin's combined sentences may be the same as a life sentence without the possibility of parole, he is not in fact serving any sentence of life without the possibility of parole, as is required by §549(A)(5). It is undisputed that all of McLaurin's sentences are for a term of years. That statute carves out an exception that is specifically limited to those inmates "with a sentence of life without the possibility of parole. . ." 57 O.S. 2014 §549(A)(5). Because McLaurin is not serving such a sentence, his basic textual argument must fail.[4]

THE EQUAL-PROTECTION ARGUMENT

¶13 "The Fourteenth Amendment guarantee of equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'" Straley v. Utah Bd. of Pardons, 582 F.3d 1208, 1215 (10th Cir. 2009) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). However:

The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons. We have attempted to reconcile the principle with the reality by stating that, if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end.

Romer v. Evans, 517 U.S. 620, 631 (1996) (citations omitted).[5]

¶14 We are persuaded that McLaurin is similarly situated with inmates serving sentences of life without the possibility of parole for the purposes of equal protection analysis. McLaurin will be 245 years old when he is first eligible for release. Absent astronomical advances in the medical sciences or divine intervention, McLaurin will die in prison just the same as those inmates who are serving sentences of life without the possibility of parole. Indeed, the purpose of such lengthy sentences was almost certainly to ensure McLaurin would die in prison even though an actual life-without-the-possibility-of-parole sentence was not available to the sentencing judge.

¶15 As such, we move to step two of the equal-protection analysis. Because the classification presented --- that is, inmates sentenced to a life-without-the-possibility-of-parole sentence versus inmates with a different sentence that has the same effect --- does not target any suspect class or implicate any fundamental right, the statute must be upheld "so long as it bears a rational relation to some legitimate end." Romer, at 631. "When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference . . ." Engquist v. Oregon Dept. of Agr., 553 U.S. 591, 602 (2008). McLaurin's burden is significant:

On rational-basis review, a classification in a statute . . . comes to us bearing a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it . . .

F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 314-15, (1993) (citations and internal quotations omitted).

¶16 The statute at issue here is the 2014 amendment which added the exception to the mandatory-savings account for life-without-the-possibility-of-parole inmates. Prior to the amendment, all inmates were required to participate in the mandatory-savings program, even though they had no possibility of release. The Oklahoma Supreme Court upheld this program in Cumbey, finding that it was rationally related to the legitimate governmental interests of "prevent[ing] the free flow of currency within the prison system and provid[ing] an inmate with sufficient funds upon his release to assist him in readjustment to society at large without further aid from the state treasury." Cumbey at ¶9, 1098. The statute as amended continues to serve those same interests. With its 2014 amendment exempting at least some inmates who will not ever be release eligible, the statute is actually more narrowly tailored to serve at least the second interest identified in Cumbey. We will not invalidate an amendment to a statute that the Oklahoma Supreme Court has previously upheld under rational basis review where the effect of the amendment is to achieve a legitimate governmental interest in a more narrowly tailored fashion than prior to the amendment.

¶17 Further, we find the line-drawing that the Legislature engaged in crafting the 2014 amendment perfectly rational. The desire for a bright-line rule as to which inmates are exempt from the mandatory-savings program and which are not serves the legitimate governmental interest of creating a program that is far easier to administer than one that draws the line at which inmates have a realistic chance of release during their life. It is obvious that a statute exempting all inmates who have no practical hope of release during their lifetimes would be far more difficult to administer than the clear exception for inmates serving a sentence of life without the possibility of parole.[6] Avoiding an individualized determination of an inmate's qualification for the mandatory-savings program is a legitimate governmental interest in and of itself. Limiting the exception to those inmates who have an actual sentence of life without the possibility of parole is a reasonable method of accomplishing that goal. Because the statute passes rational-basis review, McLaurin's arguments under the Equal Protection Clause must also fail.

THE FREE EXERCISE ARGUMENT

¶18 McLaurin alleges in his petition that he "has constitutional and statutory rights to purchase religious material as part of the Free Exercise Clause of the Oklahoma and United States Constitutions and the Religious Land Use and Institutionalized Persons Act (RLUIPA)." This statement is correct as far as it goes; however, any argument McLaurin makes that he has a property interest in the mandatory-savings fund is foreclosed by Cumbey v. State, 1985 OK 36, 699 P.2d 1094. See, supra, footnote 3. Although he may have a right to practice his religion even while incarcerated, this does not give him the unfettered right to use the funds in his mandatory-savings account to purchase religious items. After Cumbey, it is settled that inmates do not have any vested property right whatsoever in these accounts. Id. at ¶9, 1097 ("We therefore view the inmates' 20% prison accounts as conditional credits of potentially accessible funds, rather than vested property interests.").

¶19 Thus, unless McLaurin's petition can be read to indicate that ODOC refused to give him access to his mandatory-savings funds on account of his religion, his claims under the Free Exercise Clause and RLUIPA, must fail. Even under the liberal pleading standards applicable in Oklahoma, we cannot read McLaurin's petition to make allegations of disparate treatment on the basis of religion. Rather, we read his petition to state that he is entitled to the mandatory-savings funds on the same basis as an inmate serving a sentence of life without the possibility of parole. Accordingly, his claims under the Free Exercise Clause and RLUIPA were properly subject to dismissal for failure to state a claim.

THE ODOC / OCI DISTINCTION

¶20 Finally, McLaurin argues that his case is distinguishable from that presented in Cumbey because he earned his savings working for Oklahoma Correctional Industries (OCI) as opposed to working directly for ODOC. However, neither the statutes, the case law, nor ODOC policy make any distinction between wages earned through ODOC or OCI. When discussing the statute at issue in this case, the Oklahoma Supreme Court in Cumbey spoke to wages earned "while incarcerated." Cumbey at ¶8, 1098. No attempt to distinguish what entity wrote the check was made in that case, and McLaurin offers no legitimate reason to make the distinction here.

¶21 AFFIRMED.

SWINTON, V.C.J., and GOREE, J. (sitting by designation), concur.

FOOTNOTES

[1] In 1996, McLaurin was convicted on fourteen separate felony counts, for which he received the following sentences: assault with a deadly weapon (1,500 years); two counts of robbery by fear, (500 years each); kidnapping (1,750 years); three counts of rape (2,000 years each); five counts of forcible sodomy (2,000 years each); second-degree burglary (500 years); and grand larceny (500 years). The grand larceny conviction was reversed on direct appeal, but the convictions and sentences on the remaining thirteen counts were upheld.

[2] RLUIPA states: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000cc-1.

[3] ODOC does not address McLaurin's textual argument anywhere in the record, but instead relies on multiple citations to Cumbey v. State, 1985 OK 36, 699 P.2d 1094. That case, which was decided well before the life-without-the-possibility-of-parole exception was written into the statute in 2014, stands for the proposition that inmates have no basic property right in the twenty-percent, mandatory-savings fund. Id. at ¶6. It does not address the question, squarely presented here, whether an inmate serving the functional equivalent of a life-without-the-possibility-of-parole sentence should be categorized the same as an inmate serving an actual life-without-the-possibility-of-parole sentence.

[4] McLaurin cites to Moore v. Biter, 725 F.3d 1184 (9th Cir. 2013), apparently for the proposition that a life-without-parole sentence is materially indistinguishable from a term-for-years sentence where it was clear, as here, that the offender would die in prison without a meaningful opportunity for parole. Id. at 1192 ("Here, we cannot ignore the reality that a seventeen year-old sentenced to life without parole and a seventeen year-old sentenced to 254 years with no possibility of parole, have effectively received the same sentence.") However, Moore was exploring the limits of the categorical ban, set forth in Graham v. Florida, 560 U.S. 48 (2010) and Miller v. Alabama, 567 U.S. 460 (2012) and rooted in the Eighth Amendment of the United States Constitution, on sentences of life without the possibility of parole for juvenile offenders who committed non-homicide crimes. We do not think the analysis in Moore and similar cases as to what is considered cruel and unusual punishment is relevant in determining the Oklahoma Legislature's intent under the statute at issue here.

[5] See also, Dean v. Multiple Injury Tr. Fund, 2006 OK 78, ¶ 20, 145 P.3d 1097, 1103--04 ("In considering the validity of legislation challenged under equality provisions of the federal and state constitutions, the state legislature has a wide range of discretion. Where the power to regulate exists, the details of the legislation and the proper exceptions to be made rest primarily within the legislature's discretion. The legislature may distinguish between groups that otherwise resemble each other, although the power cannot be exercised arbitrarily and the distinction must have a reasonable basis.").

[6] Although cases like McLaurin's would be quite easy to determine, what of the fifty-year-old inmate with forty years until he would be eligible for release? Would he be in or out of the mandatory-savings requirement? What information would the prisons be required to take into account when making this determination? The health history of the inmate? The inmate's family's medical history? The complexity and imprecision of such determinations are obvious.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 32, 789 P.2d 1318, 61 OBJ 875, Niemeyer v. U.S. Fidelity and Guar. Co.
Discussed
 2006 OK 78, 145 P.3d 1097, DEAN v. MULTIPLE INJURY TRUST FUND
Discussed
 1998 OK 24, 956 P.2d 887, 69 OBJ 1172, MILLER v. MILLER
Discussed
 1985 OK 36, 699 P.2d 1094, Cumbey v. State
Discussed at Length
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 701.9, Punishment for First Degree Murder - Penalty for Second Degree
Cited
Title 57. Prisons and Reformatories
 Cite
Name
Level

 57 O.S. 549, Powers and Duties of State Board of Corrections - Prison Industries, Construction Division, and Administration of Inmate Trust Funds
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA