Isiah Carl GREEN, No. 275416, Individually and on behalf of all others similarly situated, Plaintiff-Appellant,

v.

W. J. ESTELLE, Jr., etc. et al., Defendants-Appellees.

No. 80–1316.

United States Court of Appeals, Fifth Circuit.
Unit A

June 29, 1981.

Rehearing Denied Aug. 21, 1981.

Avarita L. Hanson, Fulbright & Jaworski (Court-appointed), Houston, Tex., for plaintiff-appellant.

Kenneth L. Petersen, Jr., Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Before COLEMAN, AINSWORTH and SAM D. JOHNSON, Circuit Judges.

PER CURIAM:

Isiah Carl Green is a paraplegic prisoner serving a life sentence in the Huntsville Unit of the Texas Department of Corrections. Because of his condition, he is permanently assigned to the hospital ward and suffers various restrictions not placed on the general prison population. In this action, brought under 42 U.S.C. § 1983, he asserts that he is subject to cruel and unusual punishment and denial of equal protection because of his handicap. Specifically, he asserts that he should not be permanently assigned to the hospital ward because he is not sick; that he should not be subject to the dress, food, television, visitation, and other restrictions that are placed on those assigned to the hospital ward; that he is denied access to religious services, and that he is denied access to the law library.

The magistrate reviewed a computer printout of Green's inmate trust account and determined that Green could pay $12 of the $30 charge for filing and serving his complaint. Green complied, but simultaneously filed a motion for reconsideration or for leave to take an interlocutory appeal, both of which were denied by the district judge. Had Green not complied, his complaint would have been subject to dismissal.

After responsive pleadings were filed, the district court dismissed the complaint as "malicious" pursuant to 28 U.S.C. § 1915(d). The court determined that the majority of Green's allegations were raised in an action already pending before that court, No. H–78–1926. Green was advised that he should have moved to amend his pleadings in the already-pending action. Green's motion to appeal in forma pauperis was denied by the district court but granted by this Court. On appeal, Green argues that (1) the district court erred in dismissing his complaint as "malicious"; and (2) the district court abused its discretion in requiring him to make a partial payment of the filing and service fees.

### I. *Dismissal of Green's Complaint*

On October 5, 1978, Green filed his first complaint, No. H–78–1926, against W.J. Es-

telle, Jr., Director of the Texas Department of Corrections, G.P. Hardy, Assistant Warden of the Huntsville Unit, and E.L. Driver, Hospital Administrator at the Huntsville Unit. The October 5 complaint alleges that defendants violated Green's due process rights by placing him in "administrative segregation" after Green had filed grievances with the prison administration concerning his lack of access to religious services and the law library. In the October 5 complaint, Green also alleges that the conditions of his confinement in "administrative segregation" constituted cruel and unusual punishment.

Green was subsequently moved from "segregation row" and returned to his permanent housing in the prison hospital. Green then filed his second complaint, No. H–79–1378, which is the basis of the present action. This complaint, which was filed on June 29, 1979, challenges the constitutionality of applying various restrictive hospital rules and regulations to Green simply because he is handicapped and permanently housed in the hospital.[1] Acting *sua sponte*, the district court dismissed Green's complaint in the present action as "malicious" pursuant to 28 U.S.C. § 1915(d).

Section 1915(d) authorizes a district court to dismiss an action prosecuted in forma pauperis if the court is "satisfied that the action is frivolous or malicious ...." The district court offered three reasons for dismissing Green's complaint as "malicious": (1) the presence of Green's prior pending complaint made the instant complaint "entirely redundant"; (2) the pleadings of the instant suit were a "conglomeration of fragments from the prior suit"; and (3)

Green's instant suit was "patently malicious" because it was repetitious litigation of identical causes of action. Comparison of the two complaints, however, reveals that they state distinct, although related, claims: Whereas the first complaint arguably alleges that defendants responded to Green's filing of grievances with the prison administration by housing him in administrative segregation without affording Green an opportunity to contest his "protection" status, and also complains of the dangerous and unsanitary conditions that paraplegics housed in administrative segregation are exposed to, the second complaint attacks Green's permanent assignment to the hospital ward, and asserts that otherwise healthy paraplegics should not be assigned to the hospital ward, and thereby subject to its restrictions on clothing, television, commissary visitation, and other privileges.

■ It appears possible, if not probable, that Green properly could have amended his first complaint to include the allegations of the second complaint. It does not appear, however, that Green's election to forego this option, and instead to file a second complaint, can be deemed "malicious" within the meaning of the statute. Moreover, this Court has been unable to find any decision in which, on the basis of a single prior pending complaint, the filing of a subsequent complaint was held to be "malicious." *Hill v. Estelle*, 423 F.Supp. 690 (S.D.Tex.1976), relied upon by the district court, is inapposite. Following this Court's affirmance of the district court's dismissal of a prior complaint, plaintiffs in *Hill*, within ten days, filed a second complaint in the

1. Specifically, Green challenges the constitutionality of hospital rules and regulations which:
   1. Prohibit any outside exercise;
   2. Require all patients to wear pajamas issued three times a week;
   3. Require paraplegics to eat the bland diet prepared for the sick;
   4. Restrict commissary privileges to two times a week, while the general inmate population has access seven days a week;
   5. Prohibit the purchase of foods from the commissary;
   6. Restrict the use of television;
   7. Prohibit the purchasing of "fast foods" from the outside;
   8. Prohibit participation in all rehabilitation programs, including education, art classes, and movies.
   In addition, Green complains of alleged fire hazards faced by paraplegics housed in the prison hospital, and requests adequate shower facilities.

district court that was, both in wording and substance, practically identical to the first. Moreover, plaintiffs in *Hill* had failed to respond truthfully to questions in the form complaint concerning prior lawsuits filed by those plaintiffs. The district court in *Hill* also noted that, in the preceding two years, one of the plaintiffs had been a party in eighteen prior suits, while the other had participated in thirteen, all but one of which were filed pro se. Based upon the foregoing, the district court in *Hill* concluded that plaintiffs were "using the courts as a stage for their vendetta of harassment or abuse," and that plaintiffs "maliciously . . . filed a complaint as to previously litigated matters in order to abuse the judicial process . . . ." 423 F.Supp. at 695. In contrast, the facts of the case sub judice do not support the inference that plaintiff's lawsuit was brought for the purpose of maliciously abusing the judicial process. Consequently, we hold that the district court erred in dismissing Green's complaint as "malicious." On remand, the district court may wish to consider whether judicial economy would be promoted by consolidating the present suit with Green's prior pending complaint in H–78–1926.[2]

## II. *Imposition of the "Partial Payment" Requirement*

Green also complains of the district court's order requiring him to make a $12 partial payment of the fees for filing and serving his complaint. In *Braden v. Estelle*, 428 F.Supp. 595 (S.D.Tex.1977), the Southern District of Texas adopted a policy whereby pro se litigants who are unable to pay the full filing and service costs, but nonetheless are able to make some payment, are required to make a partial payment. In General Order No. 77–1, the district court implemented this policy by establishing a "sliding scale" based upon the litigant's present assets.[3] Under the plan, a district judge or magistrate reviews the plaintiff's present assets, and determines what amount, if any, of the filing and service costs the plaintiff can afford to pay. The court then enters an order requiring the plaintiff to make the specified "partial payment" or have his complaint dismissed.

In the present case, the magistrate examined a computer printout of Green's inmate trust account, which revealed balances of $10 on May 25, 1979; $30 on June 13, 1979; and $30 on July 11, 1979, the last day reflected on the printout. In addition, the magistrate noted that Green had received deposits to his account totaling $40 over the preceding two months. It appears, however, that the total deposits into Green's account over the preceding year did not exceed $80. On the basis of the foregoing facts, the magistrate determined that Green was able to pay $7 of the regular $15 filing fee, and $5 of the regular $15 fee for service on the five defendants.

As noted above, Green possessed $30 on July 11th, the last day reflected on the computer printout. The record reflects that Green possessed no other assets. Consequently, by instructing Green to make a partial payment of $12, the court required Green to expend forty percent of his total

**2.** It appears that Green's complaint in No. H–78–1926 had been previously consolidated by a different judge of that court with No. H–78–2005, also filed by Green, and involving similar issues of law and fact.

**3.**

| Petitioner's Present Assets | | Clerk's Fee | | Marshal's Fee | |
|---|---|---|---|---|---|
| Minimum Amount | Maximum Amount | Minimum Payment | Maximum Payment | Minimum Payment | Maximum Payment |
| $ 0.00 | $20.00 | $0.00 | $ 3.00 | $0.00 | $0.00 |
| $20.01 | $45.00 | $3.00 | $ 9.00 | $1.00 | $2.00 each |
| $45.01 | $65.00 | $9.00 | $15.00 | $2.00 | $3.00 each |
| $65.01 | — | | $15.00 | | $3.00 each |

assets for the privilege of filing and serving his pro se complaint. Although there is no "bright line" test for determining when a court should grant a litigant's motion to proceed in forma pauperis, and the decision whether to grant such a request is within the district court's discretion, *Adkins v. E. I. DuPont De Nemours & Co., Inc.*, 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948), the court's discretion is not unlimited, and will be reversed upon a showing of abuse. *Flowers v. Turbine Supply Division*, 507 F.2d 1242, 1244 (5th Cir. 1975). In the present case, plaintiff is a paraplegic, and it appears that his principal, although not exclusive, source of income has been his mother, who died on April 1, 1978. After making the required partial payment, Green's total assets consisted of the remaining $18. Pretermitting the question whether the imposition of a "partial payment" requirement might be proper in other cases, we conclude that, under the circumstances of the present case, the district court's decision to require Green to choose between having his complaint dismissed or making a payment totaling forty percent of his total present assets was an abuse of discretion. Consequently, on remand, the district court is instructed to order the clerk of that court to refund to Green his $12 payment.

REVERSED AND REMANDED.