Eugene T. FOUST, Petitioner,

v.

Judge J.R. PEARMAN, Presiding Judge for Osage County, Oklahoma, and Sharon Casebolt, Osage County Court Clerk, Respondents.

No. 78996.

Supreme Court of Oklahoma.

Sept. 29, 1992.

Rehearing Denied April 7, 1993.

Eugene T. Foust, pro se.

Larry D. Stuart, Dist. Atty., Pawhuska, for respondents.

SUMMERS, Justice.

The petitioner, a prisoner in the custody of the Oklahoma Department of Corrections, sent to the District Court Clerk an application for writs of mandamus and prohibition seeking relief against prison officials. Accompanying the application was the prisoner's pauper's affidavit.[1] Attached to the pauper's affidavit was a certification by the prison officials showing that the petitioner had $42.98 in his savings account and $1.12 in his draw account.[2] The District Judge issued an order to the prison officials requiring them to send *all* of the prisoner's funds to the Clerk in order for the petitioner's suit to be filed. The petitioner was also informed that he needed to send the Clerk self-addressed envelopes for the return of requested file-stamped copies.

The petitioner now seeks writs from this Court to allow the filing of his civil suit without the payment of filing fees, and to receive return copies of his pleadings without supplying a self-addressed envelope. We conclude (1) that he should have his suit filed without exhausting *all* of his savings, and (2) that he is not entitled to free postage from the Court Clerk. We thus grant the requested writs in part and deny them in part.

## I.

█ A Court Clerk must file a petition when accompanied by the appropriate filing fee or pauper's affidavit. *State ex rel. McCalister v. Graham*, 531 P.2d 1367, 1369 (Okla.1975); 28 O.S.1991 § 152. The Clerk may not challenge whether a plaintiff has insufficient funds, but the opposing party or the court on its own motion may inquire into the propriety of the pauper's affidavit. *Id.* Additionally, a court is to consider the amount of funds a prisoner has on deposit with the Department of Corrections when the court determines whether a prisoner may use a pauper's affidavit. 57 O.S.1991 § 565. In the case before us the judge clearly had the authority to inquire into the petitioner's use of a pauper's affidavit and the amount of his funds on deposit with the Department of Corrections.

█ A prisoner's savings held by the Department of Corrections may be used to pay fees or costs in filing a civil action. 57 O.S.1991 § 549(A)(5). However, a person need not pay his or her "last dollar" to use a pauper's affidavit. That is the holding of *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948), where the U.S. Supreme Court thus construed the federal counterpart to our pauper's affidavit. See also *McCone v. Holiday Inn Convention Center*, 797 F.2d 853, 854 (10th Cir.1986), wherein the court stated that *Adkins* "does not require a litigant to demonstrate absolute destitution." This concept was later

---

1. The form for the pauper's affidavit is provided by 12 O.S.1991 § 922.

2. The Department of Corrections establishes, subject to the statutory limitations, the percentages of a prisoner's wages that are apportioned to savings, personal use, dependents, the victim of the prisoner's crime, payment of creditors, costs of incarceration, and the Crime Victims Compensation Revolving Fund. 57 O.S.1991 § 549.

followed in *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). There the Court analyzed some welfare recipients' ability to pay filing fees and explained that their meager income "includes no allotment that could be budgeted for the expense to gain access to the courts...." *Id.*, 401 U.S. at 373, 91 S.Ct. at 783.

Many federal courts require prisoners to pay partial filing fees.[3] One court has said that "All courts that have considered the issue have upheld the authority of district courts to require prisoners to pay partial fees." *In re Epps*, 888 F.2d at 967. *See also Wiideman v. Harper*, 754 F.Supp. 808, 811 (D.Nev.1990). In our case the statutory amount for the filing of the application would have been $62.00, and the amount required under the court's order amounts to a partial payment of the fee. See 28 O.S.1991 § 152(A). However, it is a partial filing fee that requires the prisoner to exhaust all of his funds. That result is contra to *Adkins v. E.I. Du Pont de Nemours & Co., supra*, and *Boddie v. Connecticut, supra*, as a prisoner need not deplete his or her financial resources to use a pauper's affidavit. *In re Epps*, 888 F.2d at 967; *Evans v. Croom*, 650 F.2d at 524; *In re Smith*, 600 F.2d at 716; *Souder v. McGuire*, 516 F.2d 820, 824 (3rd Cir.1975).

■ Federal courts have concluded that the statutory authority for courts to exercise discretion and waive 100% of a filing fee includes the discretion to waive less than 100% of the fee. In other words, the discretion to waive prepayment of filing fees "need not be exercised on an all-or-nothing basis." *In ·re Epps*, 888 F.2d at 967. *See also In re Williamson*, 786 F.2d 1336, 1338 (8th Cir.1986). We conclude that the discretion given by 28 O.S.1991 § 152 in allowing a pauper's affidavit, and the consideration of the amount of prison funds allowed under 57 O.S.1991 § 565, authorize our State District Courts to require partial payment of filing fees by prisoners.

The percentages for partial payment vary,[4] and some courts have observed that any percentage rule may be inappropriate for a particular case. *In re Epps*, 888 F.2d at 967; *Collier v. Tatum*, 722 F.2d 653, 656 (11th Cir.1983). Courts have looked at account balances, monthly income, and whether the prisoner had purposefully withdrawn funds to avoid partial payments. *In re Epps*, 888 F.2d at 968; *In re Williamson*, 786 F.2d at 1340. We decline to impose a hard and fast rule for the proper percentage to use in calculating a partial filing fee.

■ The record before us shows that the petitioner receives $15.00 per month in prison wages, with $12.00 deposited into his draw account and $3.00 into his savings account. By these records it appears that no amounts are being distributed to others that would be in competition for these resources. The District Court shall determine the proper partial filing fee.[5] In the exercise of this discretion the District Court may consider present account balances of the petitioner, monthly income, petitioner's other assets, if any, and wheth-

**3.** *In re Stump*, 449 F.2d 1297 (1st Cir.1971); *In re Epps*, 888 F.2d 964, 967 (2d Cir.1989); *Jones v. Zimmerman*, 752 F.2d 76 (3d Cir.1985); *Bullock v. Suomela*, 710 F.2d 102 (3d Cir.1983); *Evans v. Croom*, 650 F.2d 521 (4th Cir.1981), *cert. denied*, 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982); *Smith v. Martinez*, 706 F.2d 572 (5th Cir.1983); *Williams v. Estelle*, 681 F.2d 946 (5th Cir.1982), *cert. denied*, 469 U.S. 1075, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984); *Green v. Estelle*, 649 F.2d 298 (5th Cir.1981); *Lumbert v. Illinois Dept. of Corrections*, 827 F.2d 257 (7th Cir.1987); *Bryan v. Johnson*, 821 F.2d 455 (7th Cir.1987); *Zaun v. Dobbin*, 628 F.2d 990 (7th Cir.1980); *Freeman v. Abdullah*, 925 F.2d 266 (8th Cir.1991); *In re Smith*, 600 F.2d 714 (8th Cir.1979).

**4.** Compare *In re Epps*, 888 F.2d at 965, utilizing a rule of 10% of the deposits in the prisoner's account over the three months prior to suit, *Freeman v. Abdullah*, using 10% of average monthly income, and *Lumbert*, 827 F.2d at 258–259 utilizing a rule of partial payment not to exceed 50% of the prisoner's average monthly income for the six-month period preceding suit. *See also* the table of maximum and minimum fees in *Green v. Estelle*, 649 F.2d at 301.

**5.** The District Court's determination of a partial filing fee would be subject to its finding that the petitioner's financial situation has not materially changed and he is still unable to pay the statutory fee.

er the petitioner has purposefully withdrawn funds to avoid payment of the statutory fee or a partial fee.

When courts use prison documents in establishing partial filing fees prisoners are given an opportunity to be heard and challenge the amount of the filing fee. *Jones v. Zimmerman,* 752 F.2d at 79; *Evans v. Croom,* 650 F.2d at 525–526. We issue the writs of mandamus and prohibition to the extent that the District Court shall not require a filing fee equal to all of petitioner's funds. The District Court shall determine the amount of the filing fee consistent with this opinion, and give the petitioner an opportunity to object to the filing fee as so determined.

## II.

 The petitioner also complains that he should be entitled to free postage for the return of file-stamped copies of his pleadings. He is not entitled to any relief on this ground. Prisoners are entitled to access to the courts. *Gaines v. Maynard,* 808 P.2d 672, 675 (Okla.1991). The method of the access may be by persons trained in the law, law libraries, or a combination of the two. *Id.* This access includes stamps. "It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, *and with stamps to mail them."* *Bounds v. Smith,* 430 U.S. 817, 824–825, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977) (emphasis added). The entity primarily responsible for determining the method of access to the courts and regulations on the use of stamps is the custodian of the petitioner, the Oklahoma Department of Corrections. That entity, and not the District Court Clerk, is constitutionally responsible under direction of the United States Supreme Court for allocating its resources to provide prisoners with access to the courts. *Bounds v. Smith, supra.*

 A prisoner does not have a right to unlimited free postage from prison officials. *Twyman v. Crisp,* 584 F.2d 352, 357 (10th Cir.1978). Prison authorities may adopt reasonable postage stamp regula-

tions. *King v. Atiyeh,* 814 F.2d 565, 568 (9th Cir.1987). In *Hoppins v. Wallace,* 751 F.2d 1161 (11th Cir.1985), the approved stamp policy was two free stamps per week. However, there is no established minimum stamp requirement. Instead the reviewing court should focus on whether the individual was denied meaningful access. *King v. Atiyeh,* 814 F.2d at 568.

 We need not decide whether the return of a file-stamped copy of an application for a writ of mandamus and prohibition filed in the trial court is necessary to satisfy a prisoner's constitutional access to the courts. No record is before us on the policy of the Department of Corrections in such matters, the Department is not a party before us, and the prisoner has not shown in this proceeding how his access to the courts is inadequate by not having a file-stamped copy of his pleading. The petitioner's application for a writ of mandamus to compel the Court Clerk to mail him a file-stamped copy of his pleading without his first furnishing the Clerk with a self-addressed and stamped envelope is hereby denied.

The petitioner's application for writs of mandamus and prohibition is granted in part and denied in part with instructions to the District Court.

LAVENDER, SIMMS and HARGRAVE, JJ., concur.

OPALA, C.J., concurs in part, dissents in part.

KAUGER, J., concurs in result in Part I, dissents from Part II.

HANSEN, S.J., sitting in vacancy, concurs in Part I; dissents from Part II.

HODGES, V.C.J., and ALMA WILSON, J., dissent from Part I, concur in Part II.

HODGES, Vice Chief Justice, concurring in part and dissenting in part.

Today's decision in Part I authorizes district courts to determine partial filing fees for civil suits brought by inmates. I must dissent. However, I concur in Part II which holds that this petitioner is not entitled to free postage for the return of file-stamped copies of his pleadings.

The majority discusses cases which hold that an indigent's "last dollar" need not go towards the cost of filing a civil action. As the majority explains, the rationale behind not requiring indigents to demonstrate absolute destitution is that their meager incomes "include no allotment that could be budgeted for the expense to gain access to the courts." *Boddie v. Connecticut*, 401 U.S. 371, 373, 91 S.Ct. 780, 783, 28 L.Ed.2d 113 (1971). But inmates are not indigent. They *do* have an allotment that can be budgeted for the expense of filing a civil suit.

By statute, the Department of Corrections must establish a savings account into which a portion of prison wages are placed. Okla.Stat. tit. 57 § 549(A)(5). That statute also provides that "[f]unds from this account may be used by the inmate for fees or costs in filing a civil action." Thus an allotment for the costs of filing civil actions is provided for inmates.

Inmates are not destitute. The state provides their meals, clothing, housing, and medical treatment. They are not faced with the lack of means which confronts indigents. Perhaps this is why the Legislature chose to allow for the payment of filing fees out of an inmate's account.

Even before the Legislature chose to so allow, this Court ordered payment of inmates' costs and fees in a civil action from the inmates' trust accounts. *Cumbey v. State*, 699 P.2d 1094 (Okla.1985), held that inmates' trust accounts prevented them from proceeding as indigents under a pauper's affidavit. *Cumbey* further held that trust account funds

> may be released to this Court and to the district courts for payment of filing fees and costs upon proper application and court order. Determination of permission to proceed *in forma pauperis* should take place on a step-by-step basis as costs are incurred. The purpose of the requirement is to curb the indiscriminate filing of prisoner civil rights actions, by prompting inmates to confront the initial dilemma which faces most other potential civil litigants: is the merit of the claim worth the cost of pursuing it?

*Id.* at 1096. Two days after the *Cumbey* decision, the Legislature amended title 57 to conform to that holding.

Today's decision fails to recognize the differences in circumstances facing an indigent person and those facing an inmate in the care and custody of the state. When an indigent person uses his or her last dollar to file a civil action, nothing is left for food or shelter. But when an inmate uses the last dollar of an inmate trust account to file a civil action, the state will continue to provide for that inmate's basic needs.

For that reason, this Court should follow *Cumbey's* rationale and prompt inmates to weigh the merits of their civil action against the cost to them as would any other civil litigant. Inmates should be allowed to proceed under a pauper's affidavit only when no funds remain in their inmate accounts.

KAUGER, Justice, concurring in result in Part I; dissenting to Part II with whom HANSEN, S.J., joins.

I dissent from the majority's requirement—that a *pro se* indigent prisoner must provide the court clerk with stamped self-addressed envelopes to receive file-stamped copies of his pleadings. This ignores the holding of the United States Supreme Court in *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72, 81 (1977). In *Bounds* the Court noted that the issue was whether States must protect the rights of prisoners

> "It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. States must forego collection of docket fees otherwise payable to the treasury and expend funds for transcripts. State expenditures are necessary to pay lawyers for indigent defendants at trial."

The majority overlooks the fact, that at least in this Court, the clerk often provides the postage to send file-stamped copies of pleadings to litigants who are not indigent. The majority also ignores the access to

courts provision of the Oklahoma Constitution art. 2 § 6.[1] While the majority notes that prisoner's approved stamp allowance is two postage stamps per month, we can take judicial notice that $0.58 will not allow timely mailing of a properly prepared petition in error. The opinion denies meaningful access to the courts of this state to this prisoner.

We noted in *Woody v. State ex rel. Dept. of Corrections*, 833 P.2d 257, 259 (Okla.1992), that a *pro se* prisoner is hampered in monitoring a lawsuit because the prisoner cannot travel to the court clerk's office and make sure the pleading was filed. If the pleading is either not filed or untimely filed the prisoner ordinarily is unable to prove fault. Here the *pro se* indigent prisoner was attempting to monitor his lawsuit and to maintain a file to protect him from any alleged procedural errors. I would follow *Bounds*, uphold art. 2 § 6, and require the court clerk to furnish the stamps to mail copies of the file-stamped pleadings.

1. Okla. Const. art. 2, § 6 provides:
"The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."