2005 OK CIV APP 80

**Luke ROBINSON, Plaintiff/Appellant,**

v.

**Stewart W. SOUTHERLAND; and Stewart W. Southerland, P.C., Defendants/Appellees.**

**No. 101,000.**

Court of Civil Appeals of Oklahoma, Division No. 3.

May 13, 2005.

Rehearing Denied June 24, 2005.

Certiorari Denied Oct. 3, 2005.

Luke Robinson, Hominy, OK, Pro Se.

Stewart W. Southerland, Tulsa, OK, for Appellees.

Opinion by LARRY JOPLIN, Presiding Judge.

¶ 1 Plaintiff/Appellant Luke Robinson (Plaintiff) seeks review of the trial court's order summarily disposing of his claims against his former attorney(s), Defendants/Appellees Stewart W. Southerland and Stewart W. Southerland, P.C. (Defendant). In this accelerated review proceeding, Plaintiff complains he was deprived of a fair trial when the trial court (1) denied him, an indigent, certified copies of the record and other documents at state expense; (2) denied him adequate discovery; (3) denied his motion to vacate the prior interlocutory disposition of some of his claims; (4) failed to ensure his appearance for trial; and (5) summarily granted judgment to Defendant upon his failure to appear for trial.

¶ 2 Plaintiff was convicted of the offense of Robbery By Force After Former Conviction of a Felony in Tulsa County District Court, and, in January 1993, was sentenced to seventy-five years confinement. The Court of Criminal Appeals affirmed his conviction in May 1995.

¶ 3 Plaintiff was convicted of the offense of Larceny of Merchandise From A Retailer After Two or More Former Felony Convictions in Muskogee County District Court, and, in November 1993, was sentenced to sixty years confinement. On direct appeal, the Court of Criminal Appeals affirmed in January 1996.

¶ 4 In November 1996, Plaintiff retained Defendant to prosecute actions for post-conviction relief on allegations of ineffective trial counsel. On April 22, 1997, Defendant filed

an Application for Post–Conviction Relief in Tulsa County District Court. On April 23, 1997, Defendant filed an Application for Relief in Muskogee County District Court. At or about the same time, Defendant filed a petition for writ of habeas corpus in the United States District Court, Northern District of Oklahoma.

¶ 5 The Northern District federal court dismissed the petition for writ for failure to exhaust state remedies. The Tulsa County District Court denied the Application for Post–Conviction Relief on November 25, 1997; Defendant timely commenced an appeal of that decision in December 1997; and, the Court of Criminal Appeals affirmed in February 1998. The Muskogee County District Court denied the Application for Post–Conviction Relief on June 2, 1998; Defendant timely commenced an appeal of that decision June 26, 1998; and, the Court of Criminal Appeals affirmed in September 1998.

¶ 6 On February 17, 1999, Defendant filed another Petition for Writ of Habeas Corpus in the United States District Court, Northern District of Oklahoma, challenging the Tulsa County conviction. On April 14, 1999, Defendant filed a Petition for Writ of Habeas Corpus in the United States District Court, Eastern District of Oklahoma, challenging the Muskogee County conviction.

¶ 7 In May 1999, a United States magistrate of the Northern District recommended dismissal of the Plaintiff's petition as filed outside the one-year limitation provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C.A. §§ 2244(d)(1)-(d)(2) (West, 2004) (eff. April 24, 1996).[1] *See also, Hoggro v. Boone,* 150 F.3d 1223 (10th Cir.1998) (June 24, 1998) (Rehearing and Suggestion for Rehearing En

Banc Denied July 24, 1998); *U.S. v. Simmonds,* 111 F.3d 737 (10th Cir.1997) (April 14, 1997). In July 1999, a federal judge agreed with the recommendation of the magistrate, and ordered the Northern District action dismissed. In October 1999, a federal judge of the Eastern District ordered Plaintiff's petition in that jurisdiction dismissed.

¶ 8 Plaintiff pro se appealed both orders to the United States Court of Appeals, Tenth Circuit. The Tenth Circuit consolidated, and in May 2000, denied certificates of appealability, dismissing both appeals. *Robinson v. Kaiser,* 215 F.3d 1337 (10th Cir.2000).

¶ 9 In January 2001, Plaintiff commenced the instant action against Defendant, claiming actual and punitive damages for Defendant's professional negligence, i.e., the untimely filing of the federal habeas corpus actions. In February 2001, Defendant filed a motion to dismiss. In May 2001, the trial court dismissed the action, finding Plaintiff under a legal disability to prosecute his claims.

¶ 10 Plaintiff subsequently filed an amended petition, and based on the same allegations of fact, sought actual and punitive damages under the theories of fraud, tortious breach of contract, failure of substantial performance, unjust enrichment and negligence. In August 2001, the trial court ordered Plaintiff's amended petition stricken.

¶ 11 Plaintiff appealed, and the Court of Civil Appeals affirmed. However, the Supreme Court granted Plaintiff's petition for writ of certiorari, vacated the opinion of the Court of Civil Appeals, reversed the order of the trial court, and remanded for further proceedings. *Robinson v. Southerland,* Case No. 96,591 (April 15, 2003) (not for publication).

---

1. "(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

¶ 12 In June 2003, Defendant filed an amended motion to dismiss, to which Plaintiff responded. In July 2003, the trial court conducted a telephone hearing on Plaintiff's motion to set/motion for extension of time for pre-trial conference. On October 7, 2003, Defendant filed a motion for summary judgment.

¶ 13 On October 23, 2003, Plaintiff filed a motion to compel production of documents, particularly, original documents and pleadings provided to Defendant by Plaintiff, as well as all Defendant's work product and pleadings filed on Plaintiff's behalf. On the same day, Plaintiff filed: (1) a "Motion to Take Judicial Notice of Opinions and Orders Issued by the Courts of the Northern and Eastern District of Oklahoma and United States Court of Appeals for the Tenth Circuit"; (2) a motion in limine, seeking to exclude any cross-examination concerning his convictions; and (3) a request for "certified copies of documents from the [court] clerk without cost for use in evidence in lue [sic] of requiring clerk to testify as to authenticity," particularly, "letters and documents of communication appended to the original complaint filed" in January 2001.

¶ 14 In November 2003, Defendant responded to the motion in limine. Defendant also responded to the request for copies, alleging Plaintiff's possession of the original or copies of all documents sought, and Plaintiff's failure to demonstrate entitlement to certified copies without cost.

¶ 15 In December 2003, Plaintiff filed his response and objection to Defendant's motion for summary judgment, and the trial court conducted a telephonic hearing in February 2004. By journal entry filed March 9, 2004, the trial court denied Defendant's motion for summary judgment on Plaintiff's "contract claim for the return of attorney fees," but granted Defendant's motion for summary judgment "on all other claims asserted by Plaintiff," "[s]pecifically, ... Plaintiff's claims for fraud, bad faith breach of contract, unjust enrichment, negligence and legal malpractice." The trial court denied the motion to compel "conditioned upon the fact that Plaintiff is entitled to copies if he has filed the proper in pauperis documents"; denied all Plaintiff's other pending motions; and scheduled pre-trial conference for March 22, 2004.

¶ 16 Plaintiff filed another motion for extension of time for pre-trial conference. After another telephone hearing on March 29, the trial court directed Defendant to prepare a pre-trial order and set jury trial for June 21, 2004.

¶ 17 On April 12, 2004, Plaintiff filed a motion for appointment of counsel and waiver of jury fees. On April 15, Defendant filed its response and objection. On April 19, 2004, Plaintiff filed a motion to vacate the March 9 order granting partial summary judgment to Defendant. On April 21, Defendant filed its response and objection to Plaintiff's motion to vacate. After a telephonic hearing May 5, 2004, the trial court denied Plaintiff's motion to vacate, denied Plaintiff's motion for appointment of counsel, and, upon Defendant's withdrawal of objection, granted Plaintiff's motion to waive jury fees.

¶ 18 On June 16, 2004, Plaintiff filed a motion to disqualify the assigned trial judge. On June 21, 2004, Plaintiff failed to appear for trial, and by journal entry of judgment filed June 24, 2004, the trial court denied the motion to disqualify and granted judgment to Defendant:

Upon review of the file, the Court noted that Plaintiff had filed a Motion to Disqualify th[is] Honorable [trial judge] on June 16, 2004. The Court denied Plaintiff's motion as untimely for failure to file ten (10) days prior to trial. The Court also denied the motion on the merits.

Previously the Court had informed Plaintiff of his duty to proceed under 12 O.S. § 397 to apply for a writ of habeas corpus in order to appear on the June 21, 2004, trial date. The last date that the Court advised Plaintiff of his duty under 12 O.S. § 397 was at the Pretrial Conference on March 29, 2004, where Plaintiff appeared by telephone. Plaintiff failed to make an application for a writ of habeas corpus and failed to appear for trial.

THIS COURT ORDERS that Plaintiff's motion to disqualify ... is denied.

THE COURT FURTHER ORDERS that judgment is entered in favor of Defen-

dants on all of Plaintiff's causes of action. Defendants may submit an Application for Attorney's Fees and Costs with the statutory time period to be considered by the Court.

Plaintiff appeals, and the matter stands submitted for review on the entire trial court record.

## I.

¶ 19 In the first proposition of his petition in error, Plaintiff complains that, as an indigent, he was improperly denied certified copies of the record and documents for introduction into evidence at trial. In this respect, Plaintiff asserted in the trial court that he intended to introduce at trial copies of the correspondence between him and Defendant, that he had appended copies of the correspondence to his original petition, and that provision of certified copies of the original petition with the attachments "would permit admission of the document without the need of a sponsoring witness to the authenticity of its existence as a public record."

¶ 20 The extent to which an indigent may be required to pay fees and costs is a question addressed to the sound discretion of the trial court. *Foust v. Pearman*, 1992 OK 135, ¶ 8, 850 P.2d 1047, 1049. According to Defendant, Plaintiff possessed copies of the documents he sought in discovery. The trial court denied Plaintiff's motion to compel "conditioned upon the fact that Plaintiff is entitled to copies if he has filed the proper in pauperis documents," and the trial court docket reflects a "paupers affidavit signed by" the then-assigned judge at the time of filing of the original petition. It would consequently appear the trial court has granted Plaintiff copies of the record which he sought. Because the record does not demonstrate the denial of which Plaintiff complains, we find no abuse of discretion by the trial court as alleged in the first proposition.

## II.

¶ 21 In the second proposition of the petition in error, Plaintiff asserts the trial court "failed to monitor discovery or to respond to [his] motion to compel production, and forced trial without completion." In this respect, "[a] trial court is accorded broad discretion in deciding discovery matters, and its determination in such matters will not be disturbed absent a finding of abuse of discretion or that the decision is contrary to law." *Bank of Oklahoma, N.A. v. Briscoe*, 1995 OK CIV APP 156, ¶ 27, 911 P.2d 311, 318.

¶ 22 In the present case, Plaintiff made several document requests, and the trial court conducted four hearings by telephone; under these circumstances, we cannot help but believe the trial court was kept abreast of the progress of discovery. As we have previously noted, although the journal entry recites the trial court's denial of Plaintiff's motion to compel, the denial was "conditioned upon the fact that Plaintiff is entitled to copies if he has filed the proper in pauperis documents," and the trial court's docket reflects a "paupers affidavit signed by" a judge of the trial court at the time of filing of the original petition. Under these circumstances, we cannot say the trial court abused its discretion in the management of discovery.

## III.

¶ 23 In the third proposition of his petition in error, Plaintiff asserts the "District Court Judge refused to contact Plaintiff by telephone (as he had on other prior occasions)[,][and] rubber-stamped the prepared [pre-trial] order of Defendants, which states Plaintiff is to appear as a defense witness *by telephone*" "[;][t]he record speaks for itself."[2] (Emphasis original.) In his fourth proposition, Plaintiff challenges the trial court's order granting judgment to Defendant upon his failure to appear, particularly where, he argues, there is *no legal or factual*

2. By this allegation, Plaintiff refers to the pretrial order, prepared by Defendant, where Defendant listed "Luke Robinson (by telephone)" as a defense witness expected to testify concerning the facts and circumstances underlying his

claims, and, as we read the proposition, Plaintiff implicitly complains that, upon his failure to appear, the trial court should have contacted him by telephone prior to disposition of his claims.

basis to grant Defendant any relief whatsoever.

¶ 24 "Any person or a prisoner confined in any prison or jail in this state who is the complaining party or defending party in any form of a civil action may apply for a Writ of Habeas Corpus for the purpose of having the prisoner appear before the court." 12 O.S. § 397(B). "The custodian of the prisoner shall be given prior notice of the application and fifteen (15) days to respond prior to the decision of the court[,] [and,] [i]f the court issues such writ, it shall be issued and delivered to the custodian of the prisoner at least fifteen (15) days prior to the date the prisoner is to appear." *Id.* The writ must provide for the custodian's payment of transportation costs, and the prisoner and/or the person applying for the writ is liable for such costs. 12 O.S. § 397(B), (C). "Any writ that fails to comply with all of the requirements of this section shall be void and unenforceable and no officer or employee of the custodian shall be liable for failing to execute said writ." 12 O.S. § 397(D).

¶ 25 Furthermore, the trial court is granted broad discretion in the enforcement of the pre-trial order, and the trial court's judgment will not be disturbed unless affected by an abuse of discretion. *Sims v. Travelers Ins. Co.,* 2000 OK CIV APP 145, ¶ 14, 16 P.3d 468, 472; *Short v. Jones,* 1980 OK 87, ¶ 13, 613 P.2d 452, 457. Absent demonstrable prejudice, the mere allegation of "surprise" arising from alleged detrimental reliance on the pre-trial order does not warrant appellate relief. *See, McKosky v. Town of Talihina,* 1977 OK CIV APP 27, ¶ 17, 581 P.2d 482, 486–487. And, there can be no doubt that a party's failure to appear for trial on the merits constitutes a ground for the award of judgment to the adverse party. 12 O.S. § 683(2); *Wagoner Nat. Bank v. Welch,* 1907 IT 33, ¶ 0(1), 104 S.W. 610.

¶ 26 The trial court conducted four hearings by telephone in order to afford Plaintiff a meaningful opportunity to advance his case to trial on the merits. According to the journal entry of judgment in the present case, the trial court "informed Plaintiff of his duty to proceed under 12 O.S. § 397 to apply for a writ of habeas corpus in order to ap-

pear on the June 21, 2004, trial date[,][and][t]he last date that the Court advised Plaintiff of his duty under 12 O.S. § 397 was at the Pretrial Conference on March 29, 2004, where Plaintiff appeared by telephone," a full three months prior to the scheduled trial date.

¶ 27 However, and although the pre-trial order in the present case lists Luke Robinson as a witness to testify on behalf of both Plaintiff and Defendant, the record reflects that Plaintiff filed no application for a writ of habeas corpus to ensure his personal appearance for trial on the merits as directed by the trial court. Under these circumstances, Plaintiff can hardly complain that the pre-trial order mislead him to believe either that his attendance would be ordered absent his timely filing of a § 397 application for writ of habeas corpus, or that the trial court would withhold judgment on the merits until he was actually present or contacted by telephone. Considering Plaintiff's failure to pursue his own attendance by timely filed application for writ of habeas corpus under § 397, we cannot say the trial court erred as a matter of either fact or law in granting judgment to Defendant upon Plaintiff's failure to appear for trial.

## IV.

¶ 28 In the last proposition of his petition in error, Plaintiff asserts the trial court erred in denying his "Motion to Vacate all judgments to Defendants, and suppressed critical evidence and admissions against Southerland." By his motion to vacate, Plaintiff sought the trial court's reconsideration of its interlocutory order granting partial summary judgment to Defendant on the claims of negligence/legal malpractice, fraud, bad faith breach of contract, and unjust enrichment.

### A. Standard of Review

¶ 29 "The correct standard of review employed upon a motion to vacate is whether sound discretion was exercised to vacate [or deny vacation of] the earlier decision." *Kordis v. Kordis,* 2001 OK 99, ¶ 6, 37 P.3d 866, 869. However, an order granting a motion for summary judgment is reviewed

"by a de novo standard," i.e., without deference to the decision below, to determine what facts are material, and whether there is a controversy of any material fact; summary judgment is proper only when there are no material facts in dispute, and the uncontroverted evidence demonstrates entitlement to judgment as a matter of law. *Prudential Ins. Co. of America*, 1998 OK 52, ¶ 2, 959 P.2d 586, 588; *Sperling v. Marler*, 1998 OK 81, ¶ 3, 963 P.2d 577, 579; *Oliver v. Farmers Ins. Group of Companies*, 1997 OK 71, ¶ 6, 941 P.2d 985, 987.

## B. Professional Negligence

¶ 30 Plaintiff's complaints of professional negligence centered on the allegation of Defendant's failure to file two petitions for writ of habeas corpus in the federal courts within the time imposed by the AEDPA, § 2244(d), resulting in the dismissal of both federal court actions for post-conviction relief. Defendant asserted no breach of duty or negligence, no damages attributable to any breach of duty, and/or no possibility of success "but for" his negligence, if any there was.

¶ 31 In support of the motion for summary judgment, Defendant presented evidentiary materials argued to show (1) an unsettled question concerning if and when the § 2244(d) period began to run, particularly considering the available or pending state post-conviction remedies; (2) his belief that § 2244(d), enacted after Plaintiff's convictions, did not apply, or, if applicable, the § 2244(d) period did not begin to run until exhaustion of available state remedies, and (3) the Tenth Circuit decision in *Hoggro*—issued *after* Defendant commenced actions for post-conviction relief in state court—deciding the question contrary to his belief. *Compare, Simmonds*, 111 F.3d at 744–46 [3]; *with, Hoggro*, 150 F.3d at 1226.[4] Defendant further argued that, given the evidence of Plaintiff's guilt of the charged crimes, and rejection of state post-conviction relief based on the evidence of guilt, Plaintiff could not demonstrate either his negligence, a "but for" better result, or compensable damages because (1) relief from the factual determination of guilt is beyond the relief that a federal court could grant on review by writ of habeas corpus, and (2) "both a successful postconviction challenge and proof of innocence are necessary to maintain a criminal malpractice claim." 28 U.S.C. § 2254(d) [5],[6]; *Parker v. Dugger*, 498 U.S. 308, 320, 111 S.Ct. 731, 739, 112 L.Ed.2d 812 (U.S.(Fla.) 1991) [7]; *Falkner v. Foshaug*, 108 Wash.App.

**3.** "[W]e hold the one-year limitations period reflected in the amended 28 U.S.C. § 2255 is . . . a reasonable time for prisoners to bring § 2255 motions whose convictions became final before the Antiterrorism and Effective Death Penalty Act took effect. Accordingly, prisoners whose convictions became final on or before April 24, 1996 must file their § 2255 motions before April 24, 1997. Consequently, because Mr. Simmonds filed his § 2255 motion prior to April 23, 1997, we hold the motion was timely."

**4.** "The clear force of the statutory language in § 2244(d)(2) requires the federal courts to toll time spent in state-court post-conviction litigation. . . . Hoggro's one-year limitations clock began to run on April 24, 1996, when AEDPA went into effect. Hoggro mailed his federal habeas petition on May 9, 1997—380 days after AEDPA went into effect. However, the time during which Hoggro had 'a properly filed application for State post-conviction or other collateral review' should be subtracted from this 380 days. Thus, the 29 days from September 26, 1996 (when Hoggro filed his application for post-conviction relief) to October 25, 1996 (when the state district court denied his application) should not be counted. The resulting elapsed time on Hoggro's limitations clock is 351 days, well within the one-year limit."

**5.** "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

**6.** Effective April 24, 1996.

**7.** "Because it is a factual issue, the deference we owe is that designated by 28 U.S.C. § 2254. In ruling on a petition for a writ of habeas corpus, a federal court is not to overturn a factual conclusion of a state court, including a state appellate court, unless the conclusion is not 'fairly supported by the record.' "

113, 29 P.3d 771, 773 (2001).[8]

¶ 32 In opposition, Plaintiff argued that Defendant verified his federal filings and thus swore to his legal competency, as well the existence of bona fide grounds for relief, but that those representations have now been revealed to be materially false, exposing Defendant to liability for negligence and fraud. In support of his response and objection to Defendant's motion for summary judgment, Plaintiff attached copies of some of his state post-conviction pleadings, as well as a copy of the Tenth Circuit Court of Appeals' decision denying his appeals from dismissal of the petitions for writ, noting his failure to "diligently pursue his remedies . . .; present any 'extraordinary circumstances' outside his control that made it impossible for him to file his petition on time . . .; or make a colorable showing of actual innocence"; referring to his "counsel's ineptitude"; and rejecting his plea for equitable tolling of the § 2244(d) period "when a petitioner is poorly represented," "based on counsel's lack of knowledge of the AEDPA."

¶ 33 "The plaintiff in a legal negligence action must prove (1) the existence of an attorney-client relationship, (2) *breach of a lawyer's duty to the client*, (3) facts constituting the alleged negligence, (4) a causal nexus between the lawyer's negligence and the resulting injury (or damage) and (5) *but for the lawyer's conduct, the client would have succeeded in the action*." *Manley v. Brown*, 1999 OK 79, ¶ 8, 989 P.2d 448, 452. (Emphasis original.) (Footnotes omitted.) *Accord, Allred v. Rabon*, 1977 OK 216, ¶ 11, 572 P.2d 979, 981. Moreover:

> . . . A lawyer who acts in good faith and in an honest belief that his advice and acts are well founded and in the best interest of his client is not answerable for a mere error of judgment when dealing with a point of law which has not been settled by a precedent-setting pronouncement and about which reasonable doubt may be en-

tertained by well-informed lawyers. When the state of the law is doubtful or debatable, a lawyer will not be held responsible for failing to anticipate how the uncertainty will ultimately be resolved.

*Manley*, 1999 OK 79, ¶ 8, 989 P.2d at 452; *Collins v. Wanner*, 1963 OK 127, ¶ 0(2), 382 P.2d 105. So, where the evidentiary materials show an attorney's "mere error of judgment" in a "clouded state of the law," such that it cannot be reasonably concluded that the "lawsuit's outcome would have been more favorable" to the complaining party, summary judgment is property granted to the attorney. *Manley*, 1999 OK 79, ¶¶ 27, 28, 989 P.2d at 457.

¶ 34 Furthermore, in those jurisdictions considering the question, the overwhelming majority hold, based on numerous public policy considerations, "that in a criminal malpractice action actual innocence is a necessary element of the plaintiff's cause of action." *See, e.g., Wiley v. County of San Diego*, 19 Cal.4th 532, 79 Cal.Rptr.2d 672, 966 P.2d 983, 985–988, 991 (1998). "Many of [the] decisions further require that 'the person's conviction has been reversed, . . . on appeal or through post-conviction relief, or the person otherwise has been exonerated." *Wiley*, 79 Cal.Rptr.2d 672, 966 P.2d at 985, fn. 2. See also, "Legal Malpractice in Defense of Criminal Prosecution," 4 A.L.R.5th 273, § 3 (Lawyer's Coop 1993). In *Mahorney v. Waren*, the Oklahoma Court of Civil Appeals recognized that a civil claim for professional negligence arising from the representation of a criminal defendant will not lie "until he can plead, in good faith, that his conviction has been invalidated as a proximate result of a breach of duty by [the attorney] which arose out of the attorney-client relationship." 2002 OK CIV APP 111, ¶ 6, 60 P.3d 38, 40.

¶ 35 Under any touchstone, Plaintiff's professional negligence claims must fail. First, Defendant presented uncontroverted evi-

---

**8.** "A legal malpractice claim requires proof of an attorney-client relationship creating a duty of care, breach of that duty, damage, and proximate cause. In criminal malpractice cases, the majority of courts who have considered the issue have imposed two additional requirements—a successful postconviction challenge and proof the plaintiff did not commit the underlying crime. Neither requirement has been considered in Washington in the context of a legal malpractice case. We conclude that both a successful postconviction challenge and proof of innocence are necessary to maintain a criminal malpractice claim."

dence of unsettled legal questions concerning when the § 2244(d)(1) one year period began, and the effect of the § 2244(d)(2) tolling provision, unanswered in *Simmonds* in April 1997, and not until disposition of *Hoggro* in late July 1998, (1) *after* Defendant's filing, but before resolution, of the state post-conviction relief actions, and (2) leaving Defendant only *one day* after disposition of the state post-conviction applications in which to file for post-conviction relief in federal court. *Hoggro*, 150 F.3d at 1226. Second, based on the evidence of guilt, Plaintiff's pleas of ineffective counsel had been twice rejected in state post-conviction proceedings, both at trial and on appeal, and given the evidence of guilt, Plaintiff did not and could not plead or prove a possibility of success on federal habeas corpus review but for Defendant's alleged negligence, if any there was. Third, Plaintiff neither alleged nor offered any materials demonstrating either his innocence of the charged crimes or even the possibility of his exoneration as a result of any acts or omissions of Defendant. We consequently hold the trial court did not err in granting partial summary judgment to Defendant or in denying Plaintiff's motion to vacate on the claim of professional negligence.

### C. Fraud

¶ 36 In support of his fraud claim, Plaintiff alleged that Defendant expressly and impliedly promised to prosecute his federal court actions for post-conviction relief with the skill and diligence of a competent attorney, but that he did not intend to provide competent legal services at the time of his hiring and payment, that his services fell below acceptable standards, and that he concealed his incompetence. Plaintiff argued Defendant's verification of the federal pleadings, coupled with his failure to timely commence the federal actions, constituted admissions to (1) the existence of Defendant's duty, his breach of duty, and damages caused thereby, and (2) the false representation of his competence.

¶ 37 The record contains numerous letters from Defendant, advising Plaintiff of his legal opinions concerning available remedies, the state of the law, chances for success, and the status of the various proceedings, belying Plaintiff's complaints of concealment. Indeed, the record, at best, demonstrates only Defendant's error of judgment concerning application of § 2244(d), not some intentionally false representation of his ability to prosecute the federal post-conviction proceedings. In short, we discern no evidence demonstrating the elements of an actionable fraud claim. *See, e.g., Madill Bank and Trust Co. v. Herrman*, 1987 OK CIV APP 4, 738 P.2d 567; *Tice v. Tice*, 1983 OK 108, 672 P.2d 1168.

### D. Tortious Breach of Contract

¶ 38 Plaintiff alleged that Defendant owed him a duty to perform his contractual obligations in good faith, but that Defendant breached his duty of good faith by failing to timely prosecute his federal post-conviction proceedings. However, the courts have generally refused to recognize a cause of action for breach of the contractual implied duty of good faith outside the bounds of the insured/insurer and employer/employee relationships. *See, e.g., Bankers Trust Co. v. Brown*, 2005 OK CIV APP 1, 107 P.3d 609; *First Nat'l. Bank and Trust v. Kissee*, 1993 OK 96, 859 P.2d 502; *Rodgers v. Tecumseh Bank*, 1988 OK 36, 756 P.2d 1223; *Hall v. Farmers Ins. Exch.*, 1985 OK 40, 713 P.2d 1027. In actions to recover for the wrongful termination of employment, recovery is allowed for the bad faith breach of the employment contract only upon a showing of some "intent to wrongfully deprive [a contracting party] of the fruits of his contract." *Hall*, 1985 OK 40, ¶ 18, 713 P.2d at 1030.

¶ 39 The record in the instant case contains evidence of state and federal post-conviction relief actions commenced by Defendant on Plaintiff's behalf, and, as we have noted, numerous letters to Plaintiff evidencing Defendant's efforts. We find no evidence in the record supporting even an inference of Defendant's intent to wrongfully deprive Plaintiff of the fruits of the parties' legal services contract.

### E. Unjust Enrichment

¶ 40 Plaintiff alleged that, in accepting payment for services which he did not render, Defendant has been unjustly en-

riched, and should pay restitution of the fee paid. "[B]efore a party may recover unjust enrichment, there must be enrichment to another coupled with a resulting injustice." *Teel v. Public Service Co. of Oklahoma,* 1985 OK 112, ¶ 23, 767 P.2d 391, 398. However, where the plaintiff has an adequate remedy at law, the court will not ordinarily exercise its equitable jurisdiction to grant relief for unjust enrichment. *Hydro Turf, Inc. v. International Fidelity Ins. Co.,* 2004 OK CIV APP 45, ¶ 19, 91 P.3d 667, 673; *Robertson v. Maney,* 1946 OK 59, ¶ 7, 166 P.2d 106, 108. Plaintiff had an adequate legal remedy for breach of contract.

¶ 41 We have reviewed the record, and discern no errors as alleged. The orders of the trial court are therefore AFFIRMED.

HANSEN, J., and BUETTNER, C.J., concur.